424 P.2d 739

STATE of Idaho, Plaintiff-Respondent,

v.

Walter J. EDELBLUTE, Defendant-Appellant.

No. 9727.

Supreme Court of Idaho.

March 3, 1967.

Rapaich & Knutson, Lewiston, for appellant.

Allan G. Shepard, Atty. Gen., and Thomas C. Frost, Asst. Atty. Gen., Boise, for respondent.

McQUADE, Justice.

On May 15, 1963, Walter J. Edelblute, appellant, entered a plea of guilty in the District Court of Nez Perce County to the felony offense of grand larceny, I.C. §§ 18–4606 and 18–4604. Appellant, then nineteen years old, stood charged with six other young men for the theft of forty cases of beer, worth two hundred dollars. After a presentence investigation report by Ernest M. Callahan, district agent for parole and probation of the Idaho Board of Correction, on June 17, 1963, the trial judge, the Honorable John W. Cramer, ordered judgment suspended and appellant put on probation for a period of three years. The order placed appellant:

> "under the legal custody and control of the Director *or* Probation and Parole of the State of Idaho, and the District Court, and subject to the rules and regulations of probation as prescribed by the Board of Correction and the District Court."

The State Board of Correction, by district agent Callahan, and appellant entered

into an "Agreement of Probation" which provided that:

"(1) [T]he court may at any time, in case of violation of the terms of probation, cause the probationer to be returned to the Court and his probation be revoked and sentence pronounced.

"(2) The probationer shall be under the legal custody and control of the Court of the Tenth Judicial District, and the Director of Probation and Parole for the State of Idaho."

This agreement recited that, by his signature, appellant did "fully understand and acce*tp* all the conditions, regulations and restrictions as made by the State Board of Correction and those imposed by the Court." Besides certain specific restrictions on appellant's permitted conduct, the agreement provided:

"That the probationer shall avoid evil associates and not frequent improper places of amusement, nor loiter upon the streets at night, and shall respect and obey the laws of the United States, State, County, and City, and at all times conduct himself as a good citizen."

On October 27, 1964, Roy E. Mosman, prosecuting attorney of Nez Perce County, petitioned Judge Cramer for a bench warrant, which was issued the next day, ordering appellant to appear before the court to show cause why probation should not be revoked and sentence imposed. The petition, incorporated in the warrant's issuance order, alleged that appellant:

"ha[d] failed to maintain a proper attitude toward an effective probation and further, that he has attempted to have improper relations with a teen-age girl, who is not the wife of the said defendant, and when his attentions were resisted, he struck said teenage girl."

On December 10, 1964, appellant's attorney filed a motion to quash the warrant on grounds of legal insufficiency for failure to state facts sufficient either to apprise appellant of the charged violation of his probation or to inform the court of probable cause for appellant's arrest.

On December 15, 1964, Judge Cramer denied the motion to quash and held a hearing in which it was disclosed that a report from probation officer Callahan was the basis for the revocation proceeding. The transcript of this hearing indicates that neither appellant nor his attorney was allowed to see this report, although the attorney asked the court for permission to examine it. Appellant's attorney told the court:

"He is charged with a violation of the terms of his probation without specifying what he has done. Now if for no other reason, we should have something in the record to delineate what he is charged with because we have a right, I believe, to know what we are trying to defend against so that we won't have to defend against it again. We are defending against some unnamed generalized things and we don't have anything at all to question anybody on."

Appellant's attorney then renewed his motion to dismiss the bench warrant, which was again denied.

Appellant then called as a witness officer Callahan, who testified that his report, an unsworn statement, contained two allegations of violations of appellant's probation:

"I specifically mentioned the conduct regarding one girl [the only specific charge of violation] and then generally the ill conduct that he had," which, Callahan admitted on questioning by appellant's attorney, was "something to this effect then, that he failed * * * to maintain a proper attitude toward an effective probation."

In answer to questions by appellant's attorney, officer Callahan said that the girl with whom appellant had "attempted to have improper relations" lived in Clarkston, Washington, and that the conduct which instigated the report occurred there, and conceded that he, officer Callahan, had accepted the story of the girl, fifteen or sixteen years old at the time, after one personal and one telephone conversation

(The report itself, Exhibit "B," only refers to a "call"), and had never conferred with her in the presence of her parents nor caused an independent investigation to be made of the charges (To the question "you don't know whether this girl's report is true or false based on any independent investigation on your part?" he replied, "I have no way of knowing."). Officer Callahan further admitted: that after appellant's attorney had interviewed the girl he told him, Callahan, that her story to him was at odds with her statements to the attorney, and that she was motivated by unrequited love since she had openly stated she "was going to send Walter up" because he had decided to marry some other girl, but Callahan never discussed with the girl or otherwise investigated appellant's attorney's statements though appellant's attorney offered documents as the basis for such an investigation; that the Friday before the hearing, the girl's parents had an appointment in the Lewiston, Idaho, office of appellant's attorney and he previously had invited Callahan to be present and talk with them, but Callahan did not attend; and that he had never discussed the "improper relations" incident with appellant. Officer Callahan further testified that, while he had generally discussed appellant's conduct with one school teacher, he had not discussed the boy's recent behavior with any of his employers (appellant had held a few jobs since his probation began, and one employer testified that his work and attitude were excellent), had only vague knowledge of appellant's employments, and did not know his income nor how much indebtedness he had paid since his probation had begun.

After officer Callahan left the witness stand, based on his testimony, appellant's attorney again renewed the motion to quash the bench warrant on grounds that there still had been no proof of any specific violation of appellant's probation. The motion was denied.

Judge Cramer took the case under advisement and, on January 6, 1965, ordered that appellant be continued on his original probation with two added conditions: first, that appellant not associate with any members of the family of the girl with whom he allegedly had attempted improper relations; second, that he was "not to be in the City of Lewiston at night for any reason at any time within six (6) months." Due to this continuation order, the conduct of the December 15, 1964, hearing is not itself in issue on this appeal. The facts have been noted merely as informative background.

On June 8, 1965, nine days before the end of the second full year of appellant's three year probation, the chain of legal proceedings began which led to this appeal. On that day, prosecuting attorney Mosman petitioned for a bench warrant for appellant's arrest, alleging that he had violated terms of his probation:

"in that; (1) He has visited and been in the City of Lewiston at night on many different occasions since the entry of the order withholding judgment and continuing probation, although six months from the date of that order has not expired,"

and "(2) * * * he has been convicted of the offenense of reckless driving in the City of Lewiston, County of Nez Perce, State of Idaho."

On Judge Cramer's order, a bench warrant incorporating the petition issued on June 9, 1965, to have appellant brought before the court to show cause why his continued probation should not have been revoked.

On June 18, 1965, appellant's attorney filed a motion to quash the warrant for legal insufficiency on grounds that it did not state evidentiary facts sufficient to apprise appellant of the specific offense charged nor to comprise a violation of the conditions of probation and for that reason was issued without probable cause. Appellant further moved to set aside the warrant on grounds: first, that he had never been inside Lewiston at night without "permission and/or knowledge of his probation officer," and had permission

from him to stay at his mother's Lewiston home during seasonal unemployment from his logging occupation; second, that charged with reckless driving at 8:55 p. m. on April 23, 1965, appellant reported the charge to his probation officer the next day, and on April 30, 1965, by his attorney, filed a demurrer to the traffic citation; that on May 5, 1965, his attorney appeared in police court at Lewiston to argue the demurrer which was overruled and a trial held although appellant's attorney objected that appellant could not appear since he was participating in a log drive in Clearwater County, Idaho; that the police court trial was held despite the request of appellant's attorney for a continuance so that appellant could appear to testify and call witnesses in his own behalf; that because of this appellant had not in fact been afforded a trial on the reckless driving charge, and that from his conviction in police court an appeal had been filed and was at that time pending in the district court of Nez Perce County (Judge Cramer's court).[1]

On June 21, 1965, a hearing was held before Judge Cramer on the allegations contained in the petition and order for the bench warrant. He denied appellant's motion to quash the warrant and, although the record is unclear, it appears that appellant's attorney was not allowed to see probation officer Callahan's report which grounded the action. The report, Exhibit "C," is dated June 4, 1965, forty-one days after officer Callahan first learned of the reckless driving incident, according to appellant's attorney's verified statement in the motion to quash the bench warrant. The report calls to the court's attention that an appeal has been taken from the conviction.

Immediately upon denying appellant's motion to quash the bench warrant, Judge Cramer stated, "I am not going to permit you to call the probation officer because I have had written reports and been in contact with him several times during the past few months." The judge then said that after the hearing in which appellant's probation had been continued, on January 6, 1965, he had specified in chambers that the added condition that appellant was "not to be in the City of Lewiston at night" meant not after six p. m., and, "I have a report here which indicates he was convicted, not only of being out late, but of reckless driving, which in my opinion requires me to do what I said in the first place [pronounce sentence]." The judge began to "proceed formally," and, after reciting appellant's order of conviction and that he had violated a condition of probation, the judge then asked if there was any legal cause why sentence should not then be pronounced.

Appellant's attorney began by stating that appellant had the permission of probation officer Callahan to be in Lewiston:

"At that time Mr. Callahan told the boy that he would have to come to Lewiston then after the work was over. Now upon coming to Lewiston he reported to Mr. Callahan, as he was asked to do, as the boy will testify that he was asked to do. Subsequent to that time whenever he was in Lewiston not working, he did report—make his reports to Mr. Callahan from here. Mr. Callahan was in constant contact with this boy on various kinds—

\* \* \* \* \* \*

"Well, the point is he had permission of the probation officer to be in Lewiston, Idaho, when he was not working."

Appellant's attorney then said that, at officer Callahan's suggestion, appellant had made some arrangements to enter the Job Corps and that Warren Smith of the Employment Security Agency was in court

---

1. On September 20, 1965, after a jury trial in the Nez Perce County Court, appellant was found not guilty of the reckless driving charge. The verdict was made part of the record herein.

to testify regarding appellant's future opportunities with the Job Corps. The attorney said that he felt appellant had the right to present evidence regarding these circumstances, whereupon Judge Cramer initiated the following colloquy:

"THE COURT: Mr. Rapaich, there is no right in this thing. This is purely a matter of grace, as you know, if you know the law.

"MR. RÁPAICH: I believe I do, Your Honor.

"THE COURT: If you don't know the law, I suggest you look it up.

"MR. RAPAICH: I have it here before me, Your Honor.

"THE COURT: Isn't it a matter of grace?

"MR. RAPAICH: It is a matter of the sound discretion of this court.

"THE COURT: It is a matter of grace, isn't it?

"MR. RAPAICH: I do not believe so, Your Honor. He is entitled to a hearing.

"THE COURT: Well, you do not know the law. I am sorry.

"MR. RAPAICH: Well, that is where we part, and I'll cite the Court the law on this when I am through. Mr. Callahan talked to the boy about a job training program on the Job Corps. He saw Mr. Warren Smith. All the arrangements were made for this. The continuance had to be had because of the arrangements as Mr. Smith will explain to the Court, if he is allowed to testify. All of this time Mr. Callahan was aware that the boy was in Lewiston, Idaho, and knew why he was here.

"THE COURT: Mr. Callahan is not on trial.

"MR. RAPAICH: I understand this, but we can call him as a witness because one of the charges here—

"THE COURT: The Court isn't going to permit you to call him.

"MR. RAPAICH: Well, that is the Court's prerogative, Your Honor, but Mr. Callahan knew that the boy was here and was here with Mr. Callahan's permission."

Judge Cramer then inquired about the reckless driving charge, noting that the police court record stated that witnesses were called and appellant was present and testified in his own behalf. Appellant's attorney stated that the police court record was in error, took the witness stand at the judge's request, and gave sworn testimony that appellant was not present in police court but was on a logging drive in the North Fork of the Clearwater River and the only witness called was the police officer who had arrested him and that "We presented no evidence. We took no part in the hearing." After leaving the witness stand, appellant's attorney reminded Judge Cramer:

"Now I called the Court last Friday and told him that we would like to subpoena Mr. Quinlan [the police judge] here on this matter because we knew he was going to be out of town and perhaps the matter should be continued."

In outline, the showing which appellant's attorney sought to present on his client's behalf was: that appellant's presence in Lewiston at the time of the reckless driving incident was sanctioned by probation officer Callahan; that appellant had never had a trial on the charge of reckless driving and that an appeal was pending from his conviction of the charge; and that appellant's rehabilitation was progressing at an exemplary pace. The attorney named approximately eight witnesses who would testify to these things.[2] Judge Cramer said he

---

2. Near the end of the short hearing, appellant's attorney summed up the boy's position as follows:

"MR. RAPAICH: The boy is charged with only two [?] things, Judge Cramer, with having been in here in this city at nighttime. We'll present testimony that he had the right to be here and he has never been tried on this crime of reckless driving, and we have, we feel, a good

"ha[d] got an outline of what your position is in the record which the court deems is insufficient," and again stated that he would not allow officer Callahan to be called as a witness since "He has been in close touch with the Court." After refusing to accept a written brief from appellant's attorney regarding appellant's rights, Judge Cramer sentenced appellant to the state penitentiary for the maximum term of five years. This is an appeal from that order.

Appellant's assignments of error present the basic question: whether, at the probation revocation proceeding below, denial of appellant's motion to quash the bench warrant restraining him, and the judge's refusal before revoking probation to allow appellant to adduce testimony and offer other evidence regarding the alleged violations of probation and his general rehabilitory behavior, were within the court's discretion or, to the contrary, constituted arbitrary acts outside the judge's power?

 In its broadest form, the issue here is joined by respondent's statement, "Probation is a privilege, an act of grace," and appellant's position, "violation of probation must be proved." In probation revocation proceedings while the probation violation need not be proved within the strict framework of a criminal trial, never-theless a probationer is entitled to judicial process which contemplates a hearing. The legal status of a probationer is placed in the limbo between citizenship's complete constitutional protection and the loss of civil rights. Thus, although the full scope of Constitutional Due Process, U.S.Const., Amend. XIV; Idaho Const. art. I, § 13, may not encompass proceedings pertinent to probation, Escoe v. Zerbst, 295 U.S. 490, 55 S.Ct. 818, 79 L.Ed. 1566 (1935),[3] nevertheless, fundamental considerations of fairness and sound judicial administration cannot tolerate an arbitrary deprivation of a probationer's liberty. See In re Peterson, 19 Idaho 433, 439, 113 P. 729, 731, 33 L.R.A.,N.S., 1067 (1911) (dictum); Burns v. United States, 287 U.S. 216, 222–223, 53 S.Ct. 154, 156, 77 L.Ed. 266, 270 (1932) (dictum); cf., Escoe v. Zerbst, supra.

Under I.C. § 19–2601 (Supp.1965), "the court in its discretion may * * * 3. Withhold judgment on such terms and for such time as it may prescribe and may place the defendant on probation [which may be to] the board of corrections * * *, under such terms and conditions as the court deems necessary and expedient." "By order duly entered the court may impose and may at any time modify any conditions of probation or suspension of sentence." I.C.

---

defense to that, but he has never been allowed to present it at any place at any time, and as far as I know, he is charged with only those two things. Everything else he has been told to do, he has done and that is where we stand. We would show that he has made a very good effort to adjust himself through his supervisor, Mr. Charles Smith, his woods supervisor. I would like the court to, if it would, permit the testimony of Social Worker, Mr. Russ Mager, who can tell the Court what he has found about this boy, the advancement the boy has made in Mr. Mager's opinion. I would call Mr. Warren Smith to tell the Court what the boy has done toward getting on this Job Corps. He was on his way on this thing until this probation matter came up again. I would call the boy's mother to testify to the boy's attitude. I would call Mr. Piche to tell you about the boy, who was a neighbor and was here before this court before. This boy has made every effort, Your Honor, to adjust. Now he faces the possibility of a penitentiary sentence over something he had permission to do and something he has never been tried on. On the day that he surrendered himself, and the Court will note that every time a warrant is issued for this boy he has surrendered himself. and also the record would show that this boy followed the police officer down to the police station on the reckless driving charge, was released on his own recognizance, came back on the date that he was to go to—before the court, posted his bond and asked for a trial. He has behaved himself as a responsible citizen. If he is guilty of anything, he is not guilty of the things he is charged with now and we would like to prove that."

3. But see Hink, The Application of Constitutional Standards of Protection to Probation, 29 U.Chi.L.Rev. 483 (1962).

§ 20–221. For revocation of the probation and imposition of sentence, however, proceedings may be instituted only when "it is proved to the satisfaction of the court that the terms and conditions upon which the defendant was placed on probation * * * or any of them have been violated or for any other cause satisfactory to the court," I.C. § 19–2602. After "it is proved" to the satisfaction of the court that a probationer has violated a term or terms of his agreement of probation, the court may issue a bench warrant for his arrest, ibid., and the probationer, if judgment is to be pronounced, must be "brought before the court." I.C. § 19–2603. I.C. § 20–222, enacted subsequently to I.C. § 19–2602, provides in part, "during probation, * * * the court may issue a warrant for violating any of the conditions of probation or suspension of sentence * * *. Thereupon the court, after summary hearing may revoke the probation."

■ The emphasis placed on proof of violations and a hearing before revocation by the preceding statutes which regulate probation revocation proceedings indicates a legislative policy that traditional rules governing the exercise of judicial power must be followed when the probationer's expressly circumscribed liberty is jeopardized. Cf. I.C. §§ 19–2502; 19–2503; 19–2510; 19–2515; 19–2516; 19–2604; 20–229; see also I.C. § 20–701(d), (e), (f) (Supp. 1965).

This statutory policy demanding equitable judicial administration of probation becomes more evident upon review of the cases in which this court has resolved problems raised by hearing procedure concerning application for probation and its revocation.

Whenever it has considered procedural standards in hearings regarding applications to withhold judgment and place a defendant on probation, this court has decided, or said, that the applicant must have an opportunity to present his version of probative facts and to contest forcefully the validity of adverse evidence. Finding that a proper hearing had not been accorded a probation applicant, this court has remanded the following cases to the trial court with instructions to grant a significant hearing: State v. Gish, 87 Idaho 341, 393 P.2d 342 (1964); State v. Freeman, 85 Idaho 339, 379 P.2d 632 (1963); State v. Mitchell, 77 Idaho 115, 289 P.2d 315 (1955); State v. Yockey, 57 Idaho 497, 66 P.2d 111 (1937). Although finding it unnecessary to remand because of an insufficient hearing, the requirements of an adequate probation application hearing were discussed also in the following cases: (the hearing was found adequate in) State v. Gish, 89 Idaho 334, 404 P.2d 595 (1965) and State v. Ellis, 70 Idaho 417, 219 P.2d 953 (1950); (due to the determination of other issues, it became unnecessary to rule on the hearing's adequacy in) State v. Grady, 89 Idaho 204, 404 P.2d 347 (1965); Franklin v. State, 87 Idaho 291, 392 P.2d 552 (1964); State v. Moore, 78 Idaho 359, 304 P.2d 1101 (1957); State v. Owen, 73 Idaho 394, 253 P.2d 203 (1953); State v. O'Dell, 71 Idaho 64, 225 P.2d 1020 (1950).

In State v. Freeman, supra, this court said:

"To fulfill the intendment of the statute [I.C. § 19–2601, empowering the district court to grant probation], the trial court must afford the defendants full opportunity to present evidence in their behalf * * * toward those circumstances which may afford an opportunity for rehabilitation," 85 Idaho at 349, 379 P.2d at 637, (quoted in State v. Grady, supra, 89 Idaho at 213, 404 P.2d 347; State v. Gish, supra, 87 Idaho at 360, 393 P.2d 342).

Applying the Freeman rule to the question whether a probationer need be shown his pre-sentence investigation report before denial of an application for probation or leniency, this court stated:

"When a trial court receives information from an investigation report, the accused must have a reasonable opportunity to examine such report so that, should he desire, he may explain and defend adverse matters therein. Otherwise the opportunity to present evidence

would be meaningless." State v. Grady, supra, 89 Idaho at 213, 404 P.2d at 353 (quoted in State v. Gish, supra, 89 Idaho at 334, 404 P.2d 595).

This court has also said, on several occasions, that:

"By the provisions of Section 19–2601, I.C. the trial court is vested with discretion to grant or refuse an application for parole [probation]. The trial court must exercise this judicial discretion in a lawful and legal manner. He must give consideration to the application and grant or deny the same in the exercise of a sound, legal discretion. The refusal of the application must not be arbitrary and cannot be based upon mere whim or caprice nor upon any ground not sanctioned by the law. [Citing cases]." State v. Ellis, supra, 70 Idaho at 421, 219 P.2d at 955, (quoted in State v. Grady, supra, 89 Idaho at 213, 404 P.2d 347; State v. Freeman, supra, 85 Idaho at 349, 379 P.2d 632; State v. Mitchell, supra, 77 Idaho at 119, 289 P.2d 315).

 From the foregoing cases, it is clear that a hearing regarding an application for probation must be conducted in a judicial manner. It is imperative that the hearing process "afford the defendants full opportunity to present evidence in their behalf." Otherwise, the trial judge might not be sufficiently informed to fulfill the obligation that he "must exercise this judicial discretion [to grant or refuse a probation application] in a lawful and legal manner * * * and grant or deny the same [the application] in the exercise of a sound, legal discretion." Further, the re-

quirement that the court conduct a probation application proceeding "according to the established principles of law," State v. Ellis, supra, 70 Idaho at 422, 219 P.2d at 955, and, concomitantly, that an applicant for probation be granted "full opportunity to present evidence in [his] behalf," inherently demands that the applicant be specifically advised of all pertinent information received by the trial court so that the applicant has an opportunity to "explain and defend adverse matters * * * [o]therwise the opportunity to present evidence would be meaningless," State v. Grady, supra.

The preceding rules were declared in the immediate context of hearings regarding a defendant who had just been convicted or had entered a plea of guilty and then applied to the court's discretion to place him on probation rather than pass sentence. However, it would seem that these rules should apply with no less vigor to the predicament of a probationer whose circumscribed liberty has been formally challenged.[4] After the judge has familiarized himself with the applicant's character, the decision to place him on probation embodies a judicial determination that the probationer's background suggests a likelihood for decent conduct and that, ultimately, he will restore himself as a good citizen.[5] See Hink, The Application of Constitutional Standards of Protection to Probation, 29 U.Chi.L.Rev. 483, 491 (1962). "Despite the broad discretion of the trial court to grant or to withhold probation and to impose conditions, it is a universal rule that probation, once granted, cannot be revoked except for a violation of a condition."; cf. Note, 59 Colum.L.Rev. 311, 314, 334–336 (1959).

---

4. See In re Peterson, 19 Idaho 433, 439, 113 P. 729, 731, (1911) (dictum). "If said sentences were suspended on certain conditions * * * in case the defendant was charged with violating the conditions of suspension, common justice would require that he be given a hearing."

5. Cf. Ex parte Medley, 73 Idaho 474, 253 P.2d 794 (1953). Probation "creates,

and rightfully so, a hope in the heart of the accused that he may ultimately be released under an order of probation without the stigma of a judgment of conviction. This is an incentive for complete rehabilitation and reform, one of the salutary objectives of the Act." 73 Idaho at 479, 253 P.2d at 797.

The issue of procedural standards required in a probation revocation hearing has been squarely presented to this court only once, in Ex parte Medley, 73 Idaho 474, 253 P.2d 794 (1953). But cf. In re Peterson, supra, which was not cited or discussed in Ex parte Medley. Respondent relies heavily upon Ex parte Medley for the proposition that any hearing granted on revocation of probation is a matter of unfettered trial court discretion. In respondent's words: "Probation is a privilege, an act of grace" and "probation is not a right but a matter of grace, [and] the probationer is not entitled to a formal hearing [upon its revocation]." However, while both statements appear in the case (the first in slightly different form), the facts of Ex parte Medley support neither proposition.

In that case, a probation officer's affidavit stating the offense by which Medley had allegedly violated probation was made part of the motion for a bench warrant to arrest him. Ex parte Medley, supra, 73 Idaho at 477, 478, 253 P.2d at 795, 796. At the revocation hearing, the judge asked Medley if he had legal cause why judgment should not then be pronounced. Medley admitted the alleged violation, association with a named woman which was forbidden by the conditions of his probation (in fact, the incident which gave rise to the hearing was that, since the beginning of his probation, he had been arraigned for kidnapping her), and asked for an opportunity to explain and justify the situation. The court listened to the explanation, which was brief, and then asked again if Medley had any legal cause to forestall judgment. Id. at 478, 253 P.2d 794. Medley himself was silent, but his attorney "stated that his single, sole and only purpose in appearing in behalf of petitioner was for the purpose of having the record show that a statutory affidavit of prejudice had been filed in the action and for the court to make some ruling on such affidavit." Ibid. Upon denial of the disqualification motion, the court revoked probation and pronounced judgment.

■ Medley did not appeal but filed an original habeas corpus petition with this court. The grounds upon which this court based its decision were set forth concisely as follows:

"It appears affirmatively by the record that petitioner was present with counsel when his probation was revoked and judgment and sentence pronounced, and that he was fully and fairly informed as to the nature and purposes of the proceedings and he was asked if he had any reason why judgment should not be pronounced; it further appears that he testified briefly and was not denied the opportunity to adduce other or further evidence in his behalf, if other he had. He sought no extension of time to prepare other or further evidence but, on the contrary, he was content to ask only the statutory disqualification of the presiding judge which was properly, and for the reasons heretofore set forth, denied; the treatment accorded petitioner under the showing was fair, and the action taken was not arbitrary but within the sound judicial discretion of the court; from the record it affirmatively appears that petitioner was given a hearing within the contemplation of the statute." 73 Idaho at 483, 253 P.2d at 799.

Cf. State v. Gish, supra, 87 Idaho at 341, 393 P.2d 342 (objection to claimed error at probation application hearing cannot be initially raised in this court).

Both legislation and decisional law mandate that a probationer have a significant hearing before revocation of his probation. Idaho statutes require that before a bench warrant issue, the probationer's violation be "proved" to the satisfaction of the court, I.C. § 19–2602, and that if judgment is to be pronounced he must be "brought before the court," I.C. § 19–2603, and granted a

"summary hearing." I.C. § 20–222.[6] This court's decisions demand that probationers receive "full opportunity to present evidence," State v. Freeman, supra, and "a reasonable opportunity to examine" adverse evidence lest the "opportunity to present evidence * * * be meaningless," State v. Grady, supra, for only thus can there be assurance that the trial judge has fulfilled his duty to " 'give consideration to the application and grant or deny the same in the exercise of a sound, legal discretion.' " State v. Mitchell, supra.[7]

In the instant case, revocation of appellant's two-year-old probation was grounded on his police court conviction for reckless driving and his 8:55 p. m. visit to the city of Lewiston. It was first argued on appellant's behalf that he had not been present during his police court trial and so had not been duly convicted of reckless driving; (although the district judge at the revocation proceeding doubted appellant's earlier absence in police court, this claim was in fact true as the district judge himself noted in his order denying bail pending appeal); and that an appeal from the reckless driving conviction was pending in district court, (as herein noted by footnote, a jury in the district court found appellant not guilty). Appellant contended that probation officer Callahan had given appellant permission to be in Lewiston at the time of his allegedly forbidden visit. Further, appellant's attorney sought to introduce evidence regarding appellant's rehabilitation, including the testimony of the boy's employer, an adult neighbor, a social worker and a Job Corps official. (In his order denying bail, the judge noted that probation officer Callahan had indicated that as far as he knew appellant's work record was good.)

The original order for appellant's probation, in the extracts set out above, delegated supervisory responsibility over him to the state director of probation and parole. This effectively placed appellant under district agent Callahan's primary supervision. Denying appellant an opportunity to support his position with Callahan's testimony considering the control which he exercised over the boy probably made any showing by appellant hopeless from the beginning. It is perhaps noteworthy that the proceedings to revoke appellant's probation were instituted only when the judge himself, according to his order denying bail pending appeal, "directed the probation officer to make an investigation," "due to a newspaper account" that the reckless driving conviction was pending on appeal to the district court. Probation officer Callahan, however, took no action against the boy until so ordered by the judge, and his report was filed on June 4, 1965, forty-one days after he learned of the incident.

Further since "the purpose of the probation statute is nothing more or less than rehabilitation," Franklin v. State, supra, 87 Idaho at 307, 392 P.2d at 562 (separate opinion of McQuade, J.),[8] it was an

6. See Model Penal Code, § 301.4 (Proposed Official Draft), which provides:
 "Notice and Hearing on Revocation or Modification of Conditions of Suspension or Probation.
 "The court shall not revoke a suspension or probation or increase the requirements imposed thereby on the defendant except after a hearing upon written notice to the defendant of the grounds on which such action is proposed. The defendant shall have the right to hear and controvert the evidence against him, to offer evidence in his defense and to be represented by counsel."
7. Cf. Burns v. United States, 287 U.S. 216, 222–223, 53 S.Ct. 154, 156, 77 L.Ed. 266, 270 (1932) (dictum).

 "[F]amiliar principles governing the exercise of judicial discretion [in probation revocation proceedings] * * * impl[y] conscientious judgment, not arbitrary action. [Citing case]. It * * * is 'directed by the reason and conscience of the judge to a just result.' [Citing case]. * * * While probation is a matter of grace, the probationer is entitled to fair treatment, and is not to be made the victim of whim or caprice."
8. See State v. Gish, 89 Idaho 334, 404 P. 2d 595, supra; State v. Grady, supra; State v. Freeman, supra; State v. Yockey, supra; cf. State v. Mitchell, supra; State O'Dell, supra; State v. Ellis, supra; see also Ex parte Medley, supra; 59 Colum. L.Rev. 311, 312–313, 334–336 (1959).

essential function of proper judicial administration that the judge, before revocation, should have allowed appellant to present evidence regarding his rehabilitation period. It would also have been proper and important to the revocation decision for appellant to have shown circumstances relating to the after-dark condition which he allegedly violated.[9]

The statutes and decisional law herein require that a probation revocation hearing must be based upon charges sufficiently specific that the probationer be informed of the allegedly violated term or condition of the probation order and the manner and circumstances of his violation so that he can intelligently prepare his defense. He must also be allowed to call witnesses under oath, to testify himself and otherwise to produce evidence in his own behalf, provided, of course, that all evidence be related to the subject of the inquiry, i.e., has he in fact violated his probation agreement in a manner which demonstrates· that he no longer deserves his circumscribed liberty? A probationer must also be given a reasonable opportunity to examine and rebut adverse evidence, and to cross-examine hostile witnesses. These procedures are essential to satisfy the standard of "full opportunity to present evidence in their [probationers'] behalf," and to guarantee that this opportunity not "be meaningless."

Respondent says that if procedures even slightly less strict than the foregoing are "necessary requisities [for a probation revocation hearing] respondent is unable to distinguish a 'summary hearing' [I.C. § 20–222] from a formal judicial proceeding." The differences from formal criminal proceedings, however, are quite obvious. The probation revocation standards do not include an indictment or a preliminary hearing; nor must there be trial by jury; nor proof beyond a reasonable doubt. But although the full stringency of the criminal law is not here applicable, nevertheless the proprieties of judicial administration do insist that if probation is to be revoked, judicial process must be observed.

Reversed and remanded for further proceedings.

TAYLOR, C. J., and SMITH, McFADDEN and SPEAR, JJ., concur.

9. See Note, 59 Colum.L.Rev. 311, 312–313, 334–336 (1959).