**Olivee CARSON, Plaintiff in Error,**

v.

**The STATE of Oklahoma, Defendant in Error.**

**No. A–17085.**

Court of Criminal Appeals of Oklahoma.

Feb. 16, 1972.

Sam F. Stowers, McAlester, for plaintiff in error.

Larry Derryberry, Atty. Gen., Fred Anderson, Asst. Atty. Gen., James E. Briscoe, Legal Intern, for defendant in error.

BUSSEY, Presiding Judge:

Olivee Carson, hereinafter referred to as defendant, entered pleas of guilty in the District Court of Pittsburg County, Oklahoma to the offenses of Forgery, Second Degree and Uttering a Forged Instrument, on September 17, 1970, and received two (2) two-year suspended sentences. Said suspended sentences were ordered revoked on June 28, 1971, and from said Orders of Revocation, a timely appeal has been perfected to this Court.

At the revocation hearing, Bill Grimes testified that he was the defendant's probation officer. One of the court-imposed conditions of the defendant's suspended sentence was that he was "not to loiter in or around or about beer parlors, and not to partake of intoxicants."

Officer Fuller of the McAlester Police Department testified that at approximately midnight on May 22, 1971, he answered a call to an address in McAlester. He observed the defendant in the street with about five or six people facing him. One of the persons advised the officer in the defendant's presence that the defendant had attempted to force his way into his home, and when he requested the defendant to leave, the defendant engaged in an argument, and then eventually left and went to another residence. After ascertaining that it was not "actually a burglary-type entry, the officer, upon observing the defendant's condition, placed him under arrest for public drunk. He testified that the defendant was slightly intoxicated, he could smell alcohol on his breath, his speech was somewhat slurred, and he had a slight waver while standing. Defendant advised the officer that he just wanted to

talk to the people, and let them get acquainted with him. Defendant stated that he had had two drinks, but that he was not drunk.

Officer Gallmore testified that he went to the scene with Officer Fuller, and his testimony did not differ substantially from that of the witness, Officer Fuller.

Deputy Sheriff Staples testified that he observed the defendant on the evening in question, and the defendant was slightly intoxicated. In response to a question by the court, the officer testified that if he had seen the defendant in that condition, he would have arrested him for being drunk in a public place.

For the defense, Ora Jones testified that she was the defendant's mother, and that on May 8, 1971, she filed a complaint in the city court of McAlester against the defendant for breaking and entering and for burglary, second degree. She subsequently asked the court to withdraw the charges when she ascertained that the refrigerator that the defendant had taken had been given to him by her mother.

The defendant testified that he was in the neighborhood to discuss a job possibility. As he was returning home, he happened to think about some of the associates that lived in the area who had some hound dogs; he stopped at the first house, knocked on the door, and asked two young boys "if the man of the house was there." They said, "No," and acted frightened, so he walked on down to the next house and talked to another gentleman. This man appeared to be very angry, and the defendant walked back to the street. The second man appeared in the street with a gun in his hand, whereupon the father of the boys appeared. Defendant testified that he was attempting to explain to the persons that he was there for peaceful reasons and he attempted to apologize. The officers drove up and heard part of the conversation, then placed him under arrest for public drunk. He testified that he had not been

drinking alcoholic beverages, but had consumed some herb medicine and aspirin. He testified that he was not drunk, and had been abiding by every rule read to him by the Probation and Parole Department.

Defendant argues under this proposition that the trial court erred in revoking his suspended sentence as the basis for the revocation of the suspended sentence, since the public drunk charge was still pending against him in the District Court of Pittsburg County. We are of the opinion that, notwithstanding the fact that the public drunk charge has not been adjudicated, there was sufficient evidence before the court to justify the court's revoking the defendant's suspended sentence. All cases to the contrary are expressly overruled.

The orders revoking the defendant's suspended sentences are affirmed.

BRETT, J., concurs in part; dissents in part.

SIMMS, J., specially concurs.

BRETT, Judge (concurring in part; dissenting in part):

I concur in that part of this decision that under the facts and circumstances in this case there was sufficient evidence to warrant the revocation of the suspended sentence, i. e., intoxication and disturbing the peace at midnight in the manner indicated.

However, I dissent to that part of the Opinion which states: "All cases to the contrary are expressly overruled." In my opinion, each case concerning the revocation of probation must be considered on its own merits. Such a blanket statement is too likely to be misconstrued; so, I therefore respectfully dissent to that part of this decision.

SIMMS, Judge (specially concurring):

Justice Bussey is eminently correct in his conclusion of affirmance of the trial court. Use of the language in his opinion "All

cases to the contrary are expressly overruled" obviously relates to dicta in Lee v. Collins, Judge, Vol. 41 O.B.J. 2768, which dicta lead to much confusion at the trial level when the same fact situation led to both the filing of an application to revoke a suspended sentence and an Information or complaint.

A reading of Lee v. Collins, supra, leads one to conclude that a formal adjudication of the criminal offense must occur before a hearing can be had on the application to revoke suspended sentence. Such is clearly not the law.

A reading of both general and specific authorities leads one to the inescapable conclusion that a formal adjudication of guilt of a criminal offense is *conclusive* evidence of violation of rules of probation and suspended sentence may be revoked on the sole ground of the conviction. The element of conviction deals only with the issue of conclusiveness.

Phillips v. State, Okl.Cr., 483 P.2d 759 (1971) holds pointedly that a suspended sentence imposed on a defendant could be revoked before such time as the offense which was the basis of the revocation was appealed and affirmed. Thus, we see there need be no finality to a conviction arising out of a single criminal transaction which was both grounds to revoke suspended sentence and to separate prosecution.

Title 22 O.S.1971, § 991b, as enacted in 1969, provided in part, " * * * the suspended sentence of said person may not be revoked for any cause unless *competent evidence* justifying the revocation of said suspended sentence is presented * * * " (Emphasis Added) Nothing within the framework of 22 O.S.1971, 991b leads this writer to the opinion that the hearing to revoke suspended sentence is to be governed by the rules applicable to criminal trials.

To the contrary, this court in In re Collyar, Okl.Cr., 476 P.2d 354 (1970) set forth the guidelines under which a hearing to revoke should be conducted. In *Collyar*, supra, we cited with approval State v. Edelblute, 91 Idaho 469, 424 P.2d 739 (1967), which holds:

"In probation revocation proceedings while the probation violation need not be proved within the strict framework of a criminal trial, nevertheless a probationer is entitled to judicial process which contemplates a hearing."

The Idaho Court goes ahead to point out that it is only through hearing that the requirements of the Fourteenth Amendment to the United States Constitution may be met.

Finding therefore, that a hearing, as distinguished from a criminal trial, is necessary to meet due process requirements, the next issue which presents itself is what quantum of evidence is necessary to be presented by the prosecutorial authority seeking the revocation.

No Oklahoma decision has been found dealing directly with the quantum of proof issue; however, the general rule is set out, without exception, at 24 C.J.S. Criminal Law § 1572(4), page 505, where in treating the subject of probation revocation, the following language is found:

"The determination by trial court of the facts need not be supported by the quantum or degree of proof required to sustain a conviction of crime; proof beyond a reasonable doubt is not necessary to sustain the trial courts [sic] determination. The preponderance of the evidence, * * * of a violation of the conditions of probation may warrant revocation. * * * "

This writer feels the law as found in Corpus Juris Secundum, supra, is a proper guideline for the trial judges of Oklahoma.

In specially concurring with Judge Bussey, I must, therefore, conclude that:

(1.) Hearing on revocation may be held prior to trial on an indictment or

information for the same act or acts;

(2.) Hearing on revocation is not a criminal trial; and,

(3.) The quantum of proof necessary to revoke a suspended sentence is by a preponderance of the evidence and not beyond reasonable doubt.

To this extent, I agree that all prior cases inconsistent with this ruling should hereby be overruled.