IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 48956

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) Filed: September 30, 2022 |
| Plaintiff-Respondent, | ) |
| | ) Melanie Gagnepain, Clerk |
| v. | ) |
| | ) THIS IS AN UNPUBLISHED |
| MICHAEL JOHN EAST, | ) OPINION AND SHALL NOT |
| | ) BE CITED AS AUTHORITY |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the Second Judicial District, State of Idaho, Nez Perce County. Hon. Jay P. Gaskill, District Judge.

Order revoking probation and executing the previously suspended sentence for felony stalking, affirmed.

Eric D. Fredericksen, State Appellate Public Defender; Andrea W. Reynolds, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Mark W. Olson, Deputy Attorney General, Boise, for respondent.

_____

HUSKEY, Judge

Michael John East appeals from the order revoking probation and executing the previously suspended sentence for felony stalking with a persistent violator enhancement. East alleges the district court erred by revoking his probation because its finding that East violated the terms of his probation was not supported by substantial evidence. Because substantial evidence supports the district court's finding that East violated his probation, the district court did not err and the order revoking probation and executing the previously suspended sentence is affirmed.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

The State charged East with six counts of video voyeurism, Idaho Code § 18-6609, and two counts of felony stalking, I.C. § 18-7905(1)(a), with a persistent violator enhancement for conduct towards a former romantic partner, I.C. § 19-2514. East pleaded guilty to one count of

1

felony stalking and the persistent violator enhancement, and the State dismissed the remaining charges. The district court sentenced East to a unified term of fifteen years, with five years determinate, and retained jurisdiction. After East completed the period of retained jurisdiction, the district court suspended the sentence and placed East on probation.

The district court's original probation order, entered on July 26, 2019, required East to comply with various terms of probation, including that he enroll in any type of treatment and/or counseling as ordered by his probation officer. Based on the circumstances of East's conviction, the Idaho Department of Correction (Department) determined East should be placed on a sex-offender case-load and supervised as a sex-offender. East disagreed and filed a motion to modify the probation terms. After a hearing on the motion, the district court entered an order on September 5, 2019, which affirmed the Department's decision to place East on a sex-offender caseload and required East to comply with many of the terms of the Department's sex-offender agreement of supervision, including requirements that East "not form or unite in a romantic interest or sexual relationship" with an individual until his supervising parole officer meets the individual and determines that the individual "is able to give effective consent." In relation to this term, the agreement also defines "sexual activity."

Subsequently, the State alleged, and the district court found, East violated several of the terms of his probation by failing to report to probation appointments, leaving Idaho without permission, consuming alcohol, and possessing pictures and videos depicting pornography. The district court revoked East's probation and executed East's previously suspended sentence. East filed an Idaho Criminal Rule 35 motion for a reduction in sentence, which the district court denied. East appealed.

While the appeal was pending, East filed a petition for post-conviction relief alleging, in part, ineffective assistance of counsel for failing to adequately explain the terms of the plea agreement. The parties stipulated to post-conviction relief. On March 4, 2021, the district court granted East's petition for post-conviction relief and resentenced East to a unified term of fifteen years, with five years determinate, suspended the sentence, and placed East on probation "under the original terms and conditions." East dismissed his pending appeal.

On March 6, 2021, the district court entered a second amended order, again placing East on probation "under the original terms and conditions." The district court's March 4, 2021, and March 6, 2021, orders indicated only that East was placed on probation "under the original terms

2

and conditions, EIGHT (8) years beginning January 10, 2019." Nonetheless, when East was released from prison and met with his probation officer on March 9, 2021, the probation officer testified that she discussed the terms and conditions of probation with East. At that time, East told his probation officer that "he had paperwork that said that he wasn't going to be on sex offender supervision." Nevertheless, the probation officer had East sign the sex-offender supervision agreement, but advised East to provide her with the paperwork he claimed excused him from those requirements. The probation officer further testified that, "over the course of the next week or so, it was decided that [East] would be supervised as a sex offender" so she let East "know that the terms and conditions that [they] originally went over would" apply.

As reflected in the probation officer's testimony, on March 16, 2021, the district court entered a third amended order, which stated that East would be subject to "the original terms and conditions" of probation and, in addition, "shall be supervised consistent with the attached Order Modifying Terms of Probation entered on September 5, 2019," thus subjecting East to supervision pursuant to the previously ordered terms of the Department's sex-offender agreement of supervision. East's probation officer testified that because East had already signed the supervision agreement during their meeting on March 9, she did not have him re-sign the agreement after the district court issued its March 16 order but she and East "continued to talk about it and that we went over it."

On May 19, 2021, the State filed a report of probation violation. The report alleged East violated his probation by: (1) entering a romantic relationship without first engaging in and completing an anger management program as ordered by his probation officer on March 15, 2021; (2) forming or uniting in a romantic interest or sexual relationship without East introducing the individual to his probation officer and getting approval for the relationship; and (3) failing to report to a May 18, 2021, probation appointment. During the subsequent probation violation evidentiary hearing, East made two arguments explaining why he did not violate the terms of his probation. First, East argued he was medically incapacitated at the time of the May 18, 2021, probation appointment; thus, any failure to appear was not willful. Second, East argued that any romantic interest or sexual relationship began before he was subject to conditions upon entering into such relationships; thus, he did not violate either of the two terms of his probation alleged in the report of violation.

3

The district court found that East knew the terms of his probation required him to meet certain conditions before entering into a romantic interest or sexual relationship; East entered into a romantic relationship without complying with the relevant terms of his probation; and East was not medically incapacitated at the time of his May 18, 2021, probation appointment because "it was obvious he was calling and talking with his probation officer" during the relevant time period. Accordingly, the district court found that East committed three probation violations by: (1) entering into a romantic relationship before completing an anger management class; (2) forming or uniting in a romantic interest or sexual relationship without introducing the individual to his probation officer and obtaining approval for the relationship; and (3) failing to report to the May 18, 2021, appointment with his probation officer. Accordingly, the district court revoked East's probation and executed the previously suspended sentence. East timely appeals.

## II.

## STANDARD OF REVIEW

Review of a probation revocation proceeding involves a two-step analysis. *State v. Garner*, 161 Idaho 708, 710, 390 P.3d 434, 436 (2017). We first determine whether the terms of probation have been violated. *Id.* Because a trial court may revoke probation only upon evidence that the probationer has violated probation, a court's finding that a violation has been proved will be upheld on appeal if there is substantial evidence in the record to support the finding. *State v. Knutsen*, 138 Idaho 918, 923, 71 P.3d 1065, 1070 (Ct. App. 2003). The State bears the burden of providing satisfactory proof of a violation, though proof beyond a reasonable doubt is not required. *State v. Edelblute*, 91 Idaho 469, 480, 424 P.2d 739, 750 (1967).

If substantial evidence supports the trial court's finding of a probation violation, we then determine whether the violation justifies revocation of the probation. *Garner*, 161 Idaho at 710, 390 P.3d at 436. With regard to this second step, the decision whether to revoke a defendant's probation for a violation is within the discretion of the trial court. *Knutsen*, 138 Idaho at 923, 71 P.3d at 1070. Thus, we review a trial court's decision to revoke probation under an abuse of discretion standard. *Id.* When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine whether the lower court: (1) correctly perceived the issue as one of discretion; (2) acted within the boundaries of such discretion; (3) acted consistently with any legal standards applicable to the specific choices before it; and

4

(4) reached its decision by an exercise of reason. *State v. Herrera*, 164 Idaho 261, 270, 429 P.3d 149, 158 (2018).

**III.**

**ANALYSIS**

East alleges the district court erred in finding he violated the terms of his probation and revoking his probation. First, East argues that due to medical incapacity, his failure to report to his May 18, 2021probation appointment was not willful. Second, East contends that because he began the relationship at issue on March 6, 2021, prior to his probation officer's order that he complete an anger management class before entering a relationship, the district court's finding that he violated this term of his probation is not supported by substantial evidence. Finally, East contends that because he began the relationship at issue on March 6, 2021, prior to the district court's March 16, 2021, order reinstating its September 5, 2019, order requiring him to comply with many of the terms of sex-offender supervision, including not forming or uniting in a romantic interest or sexual relationship without introducing the individual to his probation officer and obtaining approval for the relationship, the court's finding that he violated this term of his probation is not supported by substantial evidence. In response, the State argues substantial evidence supports the district court's findings that East violated the three terms of his probation.

A.     **Substantial Evidence Supports the District Court's Findings That East Violated the Terms of His Probation Related to East's Romantic Relationship**

We begin with consideration of whether East violated two terms of his probation by entering into the relationship at issue without completing an anger management class or introducing the individual to his probation officer and obtaining approval for the relationship. Both parties agree that East never completed an anger management class or introduced his romantic interest, Shelly, to his probation officer. But, East alleges that he entered into the romantic relationship with Shelly on March 6, 2021,[1] before his probation officer's March 15, 2021,[2] order

---

[1]     East argues on appeal that his relationship with Shelly began on March 6, 2021. In support of this, East relies on the probation violation report filed by his probation officer. However, the report was not admitted as evidence during the probation violation hearing, and there was no evidence presented during the hearing that the romantic or sexual relationship began on this date. Instead, the evidence presented at the hearing, including East's testimony, indicates that East was not in a sexual or romantic relationship with Shelly until on or about March 16.

[2]     The district court found that on March 15, 2021, East's probation officer ordered East to complete an anger management class. East notes that his probation officer testified that she had a

5

requiring him to complete an anger management class and before the district court's March 16, 2021, order reinstating its September 5, 2019, order, prohibiting East from forming or uniting in a romantic interest or sexual relationship until his probation officer met the individual and determined that the individual was able to give effective consent to the relationship. Preliminarily, we note that East signed the probation supervision agreement on March 9, 2021, which contained both terms he now contests. Thus, the issue is whether there is substantial evidence to support the conclusion that East's romantic relationship with Shelly began after his probation officer ordered him to complete an anger management class on March 15 and after East was required to obtain approval before entering into a relationship, as reflected in the March 16 order.

Substantial evidence presented at the probation violation hearing supports the conclusion that East's relationship with Shelly began on, or after, March 16, 2021, when the relationship approval requirement was ordered by the district court. At the probation violation evidentiary hearing, East's probation officer testified that she went over the terms of East's probation when East was first assigned to her caseload on March 9--three days after he met Shelly. The probation officer testified that the terms of probation she reviewed with East were the probation terms imposed by the September 5, 2019, order, which included the terms and conditions requiring compliance with the sex-offender caseload. Although East disputed he was subject to the conditions relevant to the sex-offender caseload, on March 9, 2021, he nonetheless signed the agreement of supervision that included those terms. The probation officer further testified that she had a copy of the March 16, 2021, probation order before it was filed, she called East on March 12, 2021, and confirmed that he would be required to comply with the terms and conditions of the sex-offender caseload discussed on March 9. To resolve any disputes about the applicable terms and conditions of East's probation, the district court entered an order on March 16, 2021, ordering that East comply with the terms of the sex-offender probation that were in effect on September 5, 2019. These were the same terms and conditions the probation officer testified she reviewed with East on March 9, 2021, and confirmed with East on March 12, 2021. Thus, East was advised of and acknowledged the applicable terms when he signed the agreement of supervision on March 9, 2021.

---

conversation with East regarding this requirement on March 16. Despite the one-day discrepancy, on appeal, East does not challenge the district court's finding claiming it is "irrelevant" since it is "undisputed" that he began the relationship "on March 6."

The probation officer testified that she conducted her first home visit with East on March 15, 2021. During this visit, she noticed text messages on East's phone to and from a person named Shelly. The probation officer testified that the text messages were full of heart emojis and seemed like dating conversations. However, she testified that when she asked East about the messages, East denied that he was in a relationship with Shelly. East's probation officer testified that she then ordered East to complete an anger management course before he would be allowed to engage in or enter into any kind of romantic relationship. The probation officer testified that because the terms of probation in the March 16 order were the same terms and conditions as those in the March 9 agreement that East signed, she did not have East come in to the office and re-sign the agreement. She also testified that although it was not in her notes that she reviewed the March 16 order with East, she and East "continued to talk about it and that we went over it, because we continued to have the conversation about the relationship and how that was one of his conditions." East's probation officer also testified that she asked East about Shelly at every subsequent meeting, and he always insisted they were just friends and he was not in a relationship with her. However, East's probation officer stated that in May 2021, she received a text message from East stating that he had "messed up" and wanted to talk. Accordingly, she said they set up an in-person appointment for May 18, 2021. East's probation officer testified that East called her on May 18 "in a bit of a panic" and admitted he had been in a romantic and sexual relationship with Shelly, acknowledged he had violated his probation, and "begg[ed]" not to be arrested. East's probation officer testified that she was not able to have a more detailed discussion with East about this because East was hospitalized that afternoon and he did not attend the in-person appointment. East's probation officer testified that until this phone call, she was not aware the relationship with Shelly was romantic or sexual and had not given East permission to be in a romantic or sexual relationship with Shelly.

East's probation officer testified that she subsequently spoke to Shelly, who confirmed that she dated East from early March until April 21, when she ended the relationship. East's probation officer stated that Shelly expressed that East did not take the end of the relationship well; East called and messaged Shelly from multiple phone numbers, showed up at her house without permission, and despite her requests, would not leave her alone. Screenshots of these messages were admitted at the probation violation hearing; the exhibits displayed messages from multiple phone numbers, with vulgar and accusatory language, pleas that the sender "CAN'T lose YOU"

and, Shelly's responses to these messages including twice telling the sender "DO NOT COME TO MY HOME!"

East's testimony aligned with and diverged from the testimony of his probation officer. East testified that he met Shelly at a church group meeting at a friend's home on March 6, 2021, a day after he was released from incarceration. East testified that at the time of his March 15, 2021, home visit with his probation officer, he may have begun "flirting" with Shelly, but they were "friends" and "not in a relationship by any means." East denied that he told his probation officer he was in a sexual or romantic relationship with Shelly and explained that by the time of his second home visit on April 29, 2021, any type of relationship with Shelley had ended.

Shelly also testified. Shelly explained she first met East on March 6, 2021, while administering a church grant on his behalf and began to spend a lot of time with him. Shelly testified that East asked her to enter a relationship "[e]ventually. Not right at first," and sometime "pretty early on" she began a short-lived, sexual relationship with East. But, her testimony concerning her relationship with East and when it began was unclear. As to a sexual or romantic relationship with East, Shelly testified: (1) she was not in a "committed" relationship with East; (2) she was not in a romantic relationship with East; (3) she had sex with East for a short-period of time; and (4) the sexual relationship was "early on" and "right around" March 16, 2021. She stressed that while she may have sent East flirty emojis on or around March 15, 2021, they were not in a relationship "at that point" in time. Ultimately, Shelly did not testify to the exact date this relationship began, but she believed it to be "right around" March 16. Shelly testified that she ended the relationship after East asked her to meet his probation officer because she "did not want to commit to a relationship with East."

When asked about the screenshots of messages that had been admitted, Shelly testified that she recognized the messages, received them over a two-week period "quite a while" after she ended the relationship and stopped communicating with East, and although some of the messages came from unknown numbers, she believed, based on the content and the timing of the messages, that East sent them. Shelly further stated that she had a conversation with East's probation officer about whether she should pursue a no-contact order against East.

To the extent the parties offered conflicting versions of events, we defer to the district court's credibility determinations, *see State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995)(power to judge the credibility of the witnesses, resolve any conflicts in the testimony,

8

weigh the evidence, and draw factual inferences, is vested in the trial court); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999) (power to assess credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in trial court). In this case, the district court repeatedly found East's probation officer's testimony to be more credible. Based on that credibility determination and the other evidence presented, substantial evidence supports the conclusion that East's romantic and/or sexual relationship with Shelly began after the March 15 order to participate in anger management and the March 16 order governing entering into a romantic interest or sexual relationship. East and Shelly both testified they met on March 6, 2021. However, both East and Shelly denied that they were in a romantic or sexual relationship at the time of East's first home visit on March 15, 2021. Both East (through his admissions to his probation officer, who the district court found credible) and Shelly (through her testimony) admitted that at some point they were in a romantic or sexual relationship but were not yet in a relationship on March 15, 2021. Thus, it follows that East and Shelly began this romantic or sexual relationship sometime after March 15 when East's probation officer ordered him to complete an anger management class and the March 16 order confirming the requirement East acknowledged on March 9 that he must notify his probation officer before entering into a romantic or sexual relationship.

Further, in May 2021, about two months after the relevant conditions of his probation were ordered, East's probation officer testified that East admitted he had been in a relationship with Shelly and violated the terms of his probation.[3] Accordingly, the district court's findings that East violated the terms of his probation by entering into a romantic or sexual relationship without completing an anger management class and by forming or uniting in a romantic interest or sexual relationship without introducing the individual to his probation officer and obtaining approval for the relationship, is supported by substantial evidence. We need not decide whether East violated the term of his probation relating to his failure to report to the May 18, 2021, probation appointment because the district court did not err in finding that East violated the other two terms of his probation.

**B.      It Is Clear From the Record the District Court Would Have Revoked Probation Based on the Violations Related to East's Romantic Relationship**

---

[3]      Although East testified he never made such an admission to his probation officer in May, he also testified he was unable to remember the events of the week leading up to his admission to the intensive care unit on May 18, 2021.

Based on the statements of the district court at the combined evidentiary and disposition hearing, we need not remand this case to the district court because it is clear from the appellate record that the district court would have revoked probation based on the two violations regulating East's romantic relationships.

A review of the record demonstrates the district court did not rest its decision to revoke probation based on the finding of all three probation violations. Instead, the district court found that, despite multiple chances, East violated his probation for felony stalking and continued to engage in concerning behavior towards romantic partners. Specifically, the district court stated:

> I find the State's exhibits of the phone messages to be, given the history of this case, extremely disturbing. The fact that they were sent in the three weeks before your arrest, the estimated three weeks before your arrest and right up to the date of arrest, is also very disturbing if, in fact, the relationship had been over for as long as you say it had been.
> . . . .
> It's clear to me that--I believe from the testimony, that you were aware that this was a violation of your probation. And, again, it mirrors maybe not to the degree, but the intent and the actions of what's gone [on] in this case prior.
> You've had chances at probation. You've had chances at a rider program. You've had chances following an imposition of a sentence; and yet, here we are again.

Accordingly, the district court's decision to revoke East's probation was based on an analysis of the nature of the underlying criminal conviction, the reasons for the terms and conditions of probation, and East's conduct violating those terms and conditions. As such, the record shows that the district court would have revoked East's probation even if it had found that East violated only the two terms of his probation addressed in this opinion. Therefore, the district court's decision to revoke East's probation is affirmed.

## IV.

## CONCLUSION

Substantial evidence supports the conclusion that East violated the terms of his probation related to East's romantic relationship and that the district court would have revoked East's probation based on those violations. Accordingly, the district court did not err and the order revoking probation and executing the previously suspended sentence is affirmed.

Chief Judge LORELLO and Judge GRATTON **CONCUR**.

10