454 P.2d 51

**The STATE of Idaho, Plaintiff-Respondent,**

**v.**

**Walt MOORE, aka Pete Henry Moore, Defendant-Appellant.**

**No. 10182.**

Supreme Court of Idaho.

May 8, 1969.

Dwight F. Bickel, Boise, for defendant-appellant.

Allan G. Shepard, Atty. Gen., and Richard Greener, Asst. Atty. Gen., Boise, for plaintiff-respondent.

McQUADE, Justice.

On October 23, 1967, appellant Walt Moore pleaded guilty to the charge of obtaining money under false pretenses contrary to I.C. § 18–3101. No question is raised as to the efficacy of that plea. On that same date, appellant moved for a pre-sentence investigation, withheld sentence and an order of probation under I.C. § 19–2601. Pre-sentence was ordered and the case was continued to November 6, 1967, when appellant requested and received time to rebut information contained in letters attached to the pre-sentence report. The case was continued to November 13, 1967, when appellant moved to strike these two letters. One of these letters was written by an attorney for the Securities and Exchange Commission and the other was written by the president of a Seattle insurance company for whom Moore had worked. On this latter date, appellant also presented his wife as a single rebuttal witness.

The case was again continued to December 11, 1967, when there was made available to the court and to the defendant a considerable amount of new material which had been assembled for the pre-sentence report from authorities in Canada, the Washington state insurance commissioner, the Idaho Department of Finance, and the Securities and Exchange Commission. These materials disclosed that appellant was under indictment in Idaho federal district court for mail fraud and had been under injunction of an Idaho district court prohibiting any sale of securities at the time he purported to make the sale which became the basis of his guilty plea.

The remainder of this new material related to appellant's prior conduct in the states of Washington and Idaho. The gist of a number of complaint letters to the Washington insurance commissioner was as follows. Appellant had been a good insurance salesman. However, he apparently began to sell insurance as "investments" with guaranteed returns of eight per cent. Most of the complaint letters were written by aged persons who parted with relatively large sums of money in the belief that their payments would be refunded upon demand. Later these persons discovered that they in fact had purchased insurance which they could not afford or use. It is not entirely clear how many persons really did purchase insurance which could be cancelled with a refund and how many in effect actually lent their money to appellant personally.

The material collected in a prosecution file by an attorney for the Securities and Exchange Commission related to two other men as well as appellant and their activities in Idaho. The gist of this material was that appellant posed with the other two men as agents of investment companies which may or may not have actually existed. Numerous persons were persuaded to give up good securities or options to purchase securities in exchange for promises that they would be given other more profitable securities. These promises were not honored, and the good securities were resold for cash to other persons. These conclusions are based upon summaries of interviews with the victims.

The case was again continued to December 19, 1967, to give appellant additional time to explain or rebut this information. On that date, appellant presented no other evidence or material but moved that the court reconsider its denial of his motion to strike this material. The court denied this motion and denied appellant's application for probation and withholding of sentence. The court adjudged defendant guilty and sentenced appellant to five years in the penitentiary. Appellant appeals from the sentence portion of the judgment.

The basic issue on this appeal is whether or not the court abused its discretion under I.C. § 19–2601 in denying probation and withheld sentence: more particularly whether or not the court abused that dis-

cretion in considering as part of the pre-sentence report the materials contained in the files of Washington state insurance commissioner and the Securities and Exchange Commission. I.C. § 19–2601 (Supp. 1967) provides in pertinent part:

"19–2601. *Parole—Commutation, suspension, withholding of sentence—Probation.*—Whenever any person shall have been convicted, or enter a plea of guilty, in any district court of the state of Idaho, of or to any crime against the laws of the State, except those of treason or murder, the court * in its discretion, may:

* * * * * *

"3. * Withhold judgment on such terms and for such time as it may * * * prescribe and may * place the defendant on probation."

Appellant concedes, as the State argues, that an application for withheld sentence and probation necessarily requires the court to inform itself about the defendant's personality and background and that in this process the court may consider more than that type of evidence which would be admissible at a criminal trial under the rules of evidence. Nevertheless, appellant argues that there must be some limitation upon the kind of materials which the court may consider in the exercise of its sound legal discretion if a defendant is to have a full opportunity to rebut or explain adverse matter. This case thus presents a conflict between two somewhat imponderable considerations, namely, the desire to acquire all relevant information about a particular defendant so that probation may be granted or that the punishment will fit the man and the crime and the desire to maintain standards of fairness in sentencing procedures.

Appellant argues that fairness can be maintained only by limiting the court's scope of inquiry to statements of witnesses subject to cross-examination, the report of an impartial probation or parole officer based upon his personal investigation and interviews, official transcripts of judicial or administrative proceedings in which the defendant had notice and an opportunity to be heard, an official arrest records of the Federal Bureau of Investigation. This limitation would exclude *ex parte* conclusions based upon hearsay statements of numerous private parties like those contained in the files whose use is attacked in this case. The State replies that such a limitation would unduly restrict the sentencing process and that the trial judge is fully able to consider the sources of adverse information and to refrain from giving undue weight to untrustworthy or biased material. Moreover, the State argues that a defendant can rebut adverse evidence by presenting countervailing evidence of a good record and character rather than by specifically impeaching all adverse testimony and writings through cross-examination.

■ For reasons which follow, we have concluded that the sentencing procedure followed in this case constituted neither an abuse of discretion nor a denial of due process of law. There is a long and consistent line of Idaho authorities which make it clear that probation may be granted or withheld pursuant to a sound, legal exercise of the trial court's judicial discretion and that an exercise of discretion under I.C. § 19–2601 will be upheld if it is based upon reason rather than emotion.[1] The purpose of the statute is to allow, where appropriate, "the reformation and rehabilitation of a defendant, particularly

1. State v. Edelblute, 91 Idaho 469, 424 P.2d 739 (1967); State v. Gish, 89 Idaho 334, 404 P.2d 595 (1965); State v. Grady, 89 Idaho 204, 404 P.2d 347 (1965); State v. Freeman, 85 Idaho 339, 379 P.2d 632 (1963); State v. Moore, 78 Idaho 359, 304 P.2d 1101 (1957); State v. Mitchell, 77 Idaho 115, 289 P.2d 315 (1955); State v. O'Dell, 71 Idaho 64, 225 P.2d 1020 (1950); State v. Ellis, 70 Idaho 417, 219 P.2d 953 (1950); State v. Yockey, 57 Idaho 497, 66 P.2d 111 (1937).

a first offender, and to give him an opportunity to reform and take his proper place in society."[2] In a determination of the appropriateness of a grant of probation, the trial court must consider the defendant's "previous character and actions, * * [his prospects for] abid[ing] by the terms of his probation and * * * [for] rehabilitat[ion,] and * * * the interests of society."[3] The primary consideration has been stated to be "the good order and protection of society."[4]

■ In the process of determining whether a grant of probation is appropriate in view of the considerations mentioned above, the trial court necessarily must be permitted to evaluate a broad range of information about the defendant's personality. This information may be gathered from many sources. The question whether sentence should be imposed or probation granted must turn upon the individual case. Very little information about a defendant will be irrelevant to the effort of the law to individualize treatment of convicted persons.

■ On the other hand, however, this Court has insisted that certain procedures be followed in probation proceedings in order to insure the reliability and fairness of the conclusions drawn about the defendant's personality. Thus, in both probation application and probation revocation proceedings it is required: (1) that the defendant be afforded a full opportunity to present favorable evidence; (2) that the defendant be afforded a reasonable opportunity to examine all the materials contained in the pre-sentence investigation report; (3) that the defendant be afforded a full opportunity to explain and rebut adverse evidence.[5] This jurisdiction therefore is in accord with the more enlightened views of probation and sentencing procedure.[6]

■■ However, neither the Idaho case law nor the other materials provide an answer to the specific problem in the case at bar, namely, to what extent must a defendant be able to test adverse evidence by actual cross-examination. Stated differently, the specific problem is how much and what kind of hearsay evidence may be considered in probation proceedings. If the court hears hostile witnesses, the defendant must be allowed to cross-examine them.[7] On the other hand, the pre-sentence investigation report compiled by a probation or parole officer will contain a great deal of hearsay information, and the court need not allow the defendant to cross-examine all of the sources of such information. It apparently has been thought sufficient that the defendant be permitted to examine the report and to show by means other than cross-examination the unreliability of adverse information or to counterbalance such information by providing affirmative indications of good character.

■ We believe the same rationale must be applied to the hearsay evidence contained in the files of the Idaho department of finance, the Washington state insurance commissioner and the Securities and Exchange Commission bearing upon the overall personality of appellant. It is true that information supplied by such regulatory agencies may have an *ex parte* quality because their perspectives upon certain public problems (here securities and insurance frauds) tend to be limited. However, it is also precisely because such agencies

2. O'Dell, n. 1 supra 71 Idaho at 69, 225 P.2d 1022.

3. Mitchell, n. 1 supra 77 Idaho at 118, 289 P.2d 316–317.

4. Moore, n. 1 supra 78 Idaho at 363, 304 P.2d 1103.

5. See Edelblute, n. 1 *supra* 91 Idaho at 480, 424 P.2d 750; Grady, n. 1, *supra* 89 Idaho at 213, 352–353; Freeman n.

1 *supra* 85 Idaho at 349, 379 P.2d at 637.

6. Compare A.B.A. Minimum Standards Relating to Sentencing Alternatives and Procedures § 4.4 and Commentary [pp. 213–225] (Tentative Draft 1967) and A.L.I. Model Penal Code § 301.4 (Proposed Official Draft 1962).

7. *Edelblute*, n. 1 *supra* 91 Idaho at 480, 424 P.2d 750.

have a continuing interest in certain problems that they may be able to provide some relevant information on particular defendants. Defense counsel can emphasize to the court that such information comes from partisan sources, that much of it does not relate to his client, and that certain individuals may have had cause to be spiteful or prejudiced. These are factors which a trial judge is fully capable of weighing and which were weighed in this case. It would have been preferable in this case for the prosecution and defense to have mutually agreed to exclude materials not relevant to appellant.[8] However, it appears from the record that the trial court considered only probative evidence and gave it appropriate weight. We cannot say that the discretion of the trial court was abused in receiving the questioned material.[9]

Appellant argues that the procedure followed by the trial court constitutes a denial of due process of law under the U. S. Const. Amend. XIV. However, the leading case in this area, Williams v. New York,[10] roundly affirmed a trial judge's discretionary consideration of material contained in a pre-sentence report which would have been inadmissible under the rules of evidence applicable at a trial of the guilt issue. That case dealt with a probation report, but the Court sanctioned the use of all "out-of-court sources [of information]"[11] in an effort to promote individualized treatment of convicted persons. That the use of such information for probation or sentencing purposes does not deny due process was reaffirmed in Williams v. Oklahoma[12] and Specht v. Patterson.[13] The *Specht* case does require a full judicial hearing if one conviction is subsequently made the basis for a separate criminal proceeding and a magnified sentence. Also, Mempa v. Rhay[14] and Townsend v. Burke[15] hold that probation or sentencing proceedings carried out in the absence of defense counsel will deny due process. However, these latter problems are not present in the case at bar. We therefore cannot say appellant was denied due process of law.

Finally, we note that the trial court's discretion to consider a wide range of information about a particular defendant even though it would not be admissible under the rules of evidence often may be of great benefit to a defendant. We hesitate to apply unduly strict procedural requirements which would operate equally to prevent defendants from marshalling hearsay and other evidence favorable to themselves.

For these reasons, the sentence is affirmed.

McFADDEN, C. J., DONALDSON and SPEAR, JJ., and LODGE, D. J., concur.

---

8. See the procedure suggested by A.B.A. Minimum Standards Relating to Sentencing Alternatives and Procedures § 4.5(b) and Commentary [pp. 226–228] (Tentative Draft 1967).

9. The Annotation, Court's Right, In Imposing Sentence, to Hear Evidence of, or to Consider, Other Offenses Committed by Defendant, 96 A.L.R.2d 768 at 779–808 (1964) indicates that, in the absence of a statute limiting what may be considered or of a showing that the court actually relied upon erroneous information, information may be received from almost any source for what it is worth.

10. 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949) (per Black, J.).

11. *Id.* at 251, 69 S.Ct. at 1085.

12. 358 U.S. 576, 79 S.Ct. 421, 3 L.Ed.2d 516 (1959).

13. 386 U.S. 605, 87 S.Ct. 1209, 18 L.Ed. 2d 326 (1967).

14. 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967).

15. 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948).