721 P.2d 1248

**STATE of Idaho, Plaintiff-Respondent,**

v.

**Roger Lyle CHAPMAN, Defendant-Appellant.**

**No. 16093.**

Supreme Court of Idaho.

June 19, 1986.

**150**

Eli Rapaich, argued and Scott Chapman, argued, Lewiston, for defendant-appellant.

Jim Jones, Atty. Gen., and Lynn E. Thomas, Sol. Gen., Boise, for plaintiff-respondent.

BISTLINE, Justice.

Roger Chapman was placed on probation after having been convicted of battery with intent to commit rape. Several months after the probation order was filed, Chapman's probation officer, Donald Grinstead, informed the district court that Chapman had violated several probationary conditions. The probation officer alleged that Chapman had violated the conditions of probation by consuming alcohol and committing a fourth degree assault in the State of Alaska.

A hearing was held on May 9, 1985, to consider Grinstead's allegations. At the hearing Chapman admitted that he had violated the terms of his probation. The inquiry then turned to whether the admitted probation violations justified revocation of probation.

After finding that Chapman had violated his conditions of probation, the district court informed Chapman that in deciding whether to revoke his probation, it intended to consider reports about Chapman which had been submitted to the court, Chapman's record since his last presentence investigation report—conducted in 1981—and court records of Latah County, which detailed a prior criminal prosecution against Chapman. The district court also stated that it would consider any additional information Chapman might wish to submit to the court.

On May 23, 1985, the district court decided to terminate Chapman's probation. The court stated that it reached its decision based upon the following reasons: (1) Chapman displayed little prospect for rehabilitation; (2) Chapman had been on probation several times without any apparent benefit; and (3) psychiatric and psychological opinions of Chapman did not weigh in favor of continued probation.

The court entered a written judgment, but did not file any written findings of fact as to the basis upon which Chapman's probation was revoked. Upon having his probation revoked, Chapman was ordered to serve a 15–year prison term. Chapman now appeals to this Court.

Chapman raises three issues on appeal: (1) Did Chapman's probation officer violate due process when he allegedly failed to investigate the nature of Chapman's alleged probation violations? (2) Did the district court violate due process when it failed to file written findings of fact concerning the basis upon which it relied in revoking Chapman's probation? and (3) Did the district court err in considering Chapman's background in deciding whether to revoke his probation? As explained below, we hold against Chapman on each issue, and *affirm* the decision of the district court.

## I. DUE PROCESS

### A. *The Requirements of Due Process.*

The two seminal Supreme Court cases on the requirements due process imposes in probation and parole revocation proceedings are *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), and *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973).

In *Morrissey*, the United States Supreme Court held that the revocation of parole entailed a loss of liberty that requires due process protection. *Morrissey, supra,* 408 U.S. at 482, 92 S.Ct. at 2600–01. Accordingly, the Court held that a parolee is entitled to two hearings. The first one is a preliminary hearing to determine if there is probable cause to believe that the parolee has committed a violation of his or her parole. The second hearing is one to determine if the parole violation justifies revocation of parole. *Id.* at 485–88, 92 S.Ct. at 2602–03.[1] In *Gagnon*, the Court held that due process protection also applies to probation revocation proceedings. *Gagnon, supra,* 411 U.S. at 782, 93 S.Ct. at 1759. The Court stated that because there is little difference "relevant to the guarantee of due process between the revocation of parole and the revocation of probation," *id.*, a probationer also is "entitled to a preliminary and a final revocation hearing under the conditions specified in *Morrissey v. Brewer, supra.*" *Id.* (footnote omitted).

The conditions specified in *Morrissey*, in addition to those mentioned above, include the following:

(a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a "neutral and detached" hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole. *Morrissey, supra,* 408 U.S. at 489, 92 S.Ct. at 2604.

In *State v. Wolfe*, 99 Idaho 382, 386–87, 582 P.2d 728, 732–33 (1978), this Court held that a recommendation by state correction officials concerning the possibility of putting an individual on probation implicates liberty interests sufficient to qualify for due process protection under the due process clause of art. 1, § 13 of the Idaho Constitution. In deciding what process is due, the Court adopted procedures essentially similar to those discussed in *Morrissey. Id.* at 389, 582 P.2d at 735.

In *State v. Edelblute*, 91 Idaho 469, 480, 424 P.2d 739, 750 (1967), this Court presciently adopted standards similar to those announced in *Morrissey*, holding that certain procedures must be followed in any probation proceeding. Specifically, the *Edelblute* Court stated that in a probation revocation hearing, a defendant is entitled: (1) to present favorable evidence; (2) to examine all the material contained in any pre-sentence investigation report; and (3) to explain and rebut adverse evidence. *Id. Accord, State v. Moore*, 93 Idaho 14, 17, 454 P.2d 51, 54 (1969). Both *Edelblute* and *Moore* were quoted from and extensively relied upon in *Wolfe. Wolfe, supra,* 99 Idaho at 388–89, 582 P.2d at 734–35.

Applying these principles to the facts of this case convinces us that the district court did not violate any of Chapman's due process rights. Our reasons are set forth below.

B. *Due Process vis-a-vis the Probation Officer.*

■ Chapman's first argument is that Chapman's probation officer, Grinstead, violated due process when he allegedly failed: (1) to investigate the circumstances of the probation violations; (2) to investigate Chapman's behavior while on probation; and (3) to investigate the prospects for a continued successful probation. Ap-

---

**1.** The Court defined these two hearings in the following way:

The first step in a revocation decision thus involves a wholly retrospective factual question: whether the parolee has in fact acted in violation of one or more conditions of his parole. Only if it is determined that the parolee did violate the conditions does the second question arise: should the parolee be recommitted to prison or should other steps be taken to protect society and improve chances of rehabilitation? *Id.* 408 U.S. at 479–80, 92 S.Ct. at 2599.

pellant's Opening Brief, p. 27. We disagree.

Chapman bases his argument on the proposition that Idaho places a high priority on obtaining relevant information necessary to determine if an individual's probation should be revoked. We do not disagree with this proposition, but we fail to see how it supports Chapman's argument on this point.

In *Moore, supra,* 93 Idaho at 17, 454 P.2d at 54, this Court stated that "the trial court necessarily must be *permitted to* evaluate a broad range of information about the defendant's personality. This information *may* be gathered from many sources." (Emphasis added.) Nowhere in *Moore* nor at any other time has this Court or the United States Supreme Court held that *certain* information *must* be gathered by *certain* individuals. Indeed, such a rigid rule would render inflexible that which must be flexible. *Id.; see also Morrissey, supra,* 408 U.S. at 490, 92 S.Ct. at 2604. ("We have no thought to create an inflexible structure for parole [or probation] procedures.")

What is important, and what is constitutionally required, is that the district court "be permitted to evaluate a broad range of information...." *Moore, supra,* 93 Idaho at 17, 454 P.2d at 54. To that end, as stated above, and for that very reason, did this Court in *Edelblute* and *Moore* state that a defendant has the *right* to present evidence and explain and rebut any adverse evidence.

Requiring a *certain* individual to collect *certain* information does not fulfill any constitutional purpose. The teachings of *Morrissey, Gagnon, Edelblute,* and *Moore* are clear. They unequivocally state that the *reason* for the attachment of due process protection to proceedings such as we have here is "to assure that the finding of a parole [or probation] violation will be based on *verified* facts and that the exercise of discretion will be informed by an *accurate* knowledge of the parolee's behavior." *Morrissey, supra,* 408 U.S. at 484, 92

S.Ct. at 2602 (emphasis added); *see also Gagnon, supra,* 411 U.S. at 785, 93 S.Ct. at 1761; *Edelblute, supra,* 91 Idaho at 477, 424 P.2d at 747; *Moore, supra,* 93 Idaho at 17, 454 P.2d at 54. That purpose is not furthered by requiring that certain sources of information be acquired by certain individuals, and we so hold.

■ Chapman does not contend that information relating to the violation of his terms of probation, his behavior while on probation, and the prospects of continued successful probation were suppressed or not considered. To the contrary, the record shows that this information was considered and was sufficient to permit the district court to exercise its discretion properly, and we so hold. We also note that Chapman had full opportunity to submit evidence on these matters. We therefore affirm the district court on this point.

C. *Due Process vis-a-vis the District Court.*

Chapman's last argument is that the district court violated due process by not filing written findings of facts upon which to base its decision to revoke Chapman's probation. Chapman relies upon *Morrissey, supra,* and *Gagnon, supra,* for the proposition. We do not believe the district court erred.

*Morrissey, supra,* and *Gagnon, supra,* as mentioned above, state that "due process requires 'a written statement by the factfinders as to the evidence relied on and reasons for revoking [probation or] parole.' *Morrissey v. Brewer, supra,* at 489, 92 S.Ct. at 2604." *Gagnon, supra,* 411 U.S. at 786, 93 S.Ct. at 1762. In *Black v. Romano,* 105 S.Ct. 2254, 2259 (1985), the Supreme Court stated the purpose of this requirement as follows: "The written statement required by *Gagnon* and *Morrissey* helps to *insure accurate factfinding* with respect to any alleged violation and *provides an adequate basis for review to determine if the decision rests on permis-*

*sible grounds supported by the evidence."* (Emphasis added.)

In *Black,* a Missouri state court revoked a criminal defendant's probation after finding that the individual had violated several conditions of the defendant's probation. In revoking the defendant's probation, the trial judge prepared a memorandum of his findings. The Supreme Court held that this was sufficient under *Morrissey* and *Gagnon. Id.* at 2260. We likewise hold that what the district court did here satisfied due process.

▋ As mentioned above, the district judge did not enter written findings of fact. He did, however, from the bench, fully explain his reasons for revoking Chapman's probation. Those reasons were transcribed, are now part of the record before us, and are capable of review. In reviewing the record, we find that it is sufficient for us to determine "the evidence relied on and [the district court's] reasons for revoking" Chapman's probation. *Gagnon, supra,* 411 U.S. at 786, 93 S.Ct. at 1762, *quoting Morrissey, supra,* 408 U.S. at 489, 92 S.Ct. at 2604, and we hold that the district court's decision to revoke probation rests on permissible grounds and is supported by the evidence. We thus hold that the district court did not abuse its discretion in deciding to revoke Chapman's probation. Accordingly, no due process violation has occurred here.

The key requirement of *Morrissey, Gagnon,* and *Black* is that there be something in the record, *capable of review,* which allows an appellate court to determine if discretion has been abused and due process violated, in the revocation of an individual's probation. The district court's stated reasons here satisfy that requirement. Only a hypertechnical interpretation of *Morrissey* and *Gagnon* would lead to the conclusion that due process has been violated. As stated above, that is an approach we have eschewed, *Moore, supra,* 93 Idaho at 17, 454 P.2d at 54, and against which the Su-

preme Court has spoken. *Morrissey, supra,* 408 U.S. at 490, 92 S.Ct. at 2604–05. Accordingly, we affirm the district court on this point.

## II. CONSIDERATION OF EVIDENCE OF CONDUCT PRIOR TO INITIAL SENTENCING

Chapman next argues that the district court improperly considered evidence about Chapman which related to conduct occurring *prior* to his being placed on probation in the instant case. Chapman reasons that that evidence already has been considered once, and because the trial court originally granted Chapman probation notwithstanding this evidence, it should be bound by that determination now. Hence, Chapman suggests, only evidence *subsequent* to the original probation decision should be considered now in determining if Chapman's probation ought to be revoked. We are not persuaded.

As we mentioned above, in the process of determining whether an individual's probation should be revoked, the trial court *"necessarily must* be permitted to evaluate a broad range of information about the defendant[ ].... *Very little information* about a defendant will be irrelevant to the effort of the law to individualize treatment of convicted persons." *Moore, supra,* 93 Idaho 17, 454 P.2d at 54 (emphasis added). Precluding consideration of Chapman's conduct prior to his being placed on probation would unwisely skew the trial court's consideration of the necessary facts which the court needs in order to properly individualize its decision *vis-a-vis* him.

In *State v. Trowbridge,* 95 Idaho 640, 641, 516 P.2d 362, 363 (1973), this Court stated the following:

In determining whether to grant or to deny probation, the district court *must consider:*

(1) all the facts and circumstances surrounding the offense of which the defendant is convicted;

(2) whether the defendant is a first offender;

(3) *the previous actions and character of the defendant;*

(4) whether the defendant might reasonably be expected to be rehabilitated;

(5) whether it reasonably appears that the defendant will abide by the terms of the probation; and

(6) the interests of society in being protected from possible future criminal conduct of the defendant. *State v. Ogata,* 95 Idaho 309, 508 P.2d 141 (1973); *State v. Kauffman,* 94 Idaho 20, 480 P.2d 614 (1971); *State v. Gish,* 89 Idaho 334, 404 P.2d 595 (1965); *State v. Mitchell,* 77 Idaho 115, 289 P.2d 315 (1955). (Emphasis added.)

In a more general sense, this Court has stated that in fixing punishment for a crime "the law recognizes that the *previous character,* good or bad, of one convicted *should* be considered in fixing the punishment." *State v. Weise,* 75 Idaho 404, 411, 273 P.2d 97, 101 (1954) (emphasis added). These mandates are essential to proper sentencing and could not be fulfilled were we to adopt Chapman's argument.

We likewise do not agree with Chapman's argument that principles of collateral estoppel or double jeopardy preclude the district court from considering the evidence it did. First of all, the decision to grant probation does *not* constitute a finding that an individual can be rehabilitated. Whether the individual can or cannot be rehabilitated is virtually dependent upon that individual. A decision to grant probation is a "sign that society has not given up on an individual and that a criminal is still a member of that society." *Wolfe, supra,* 99 Idaho at 386, 582 P.2d 732. Rather than constituting a definitive judgment about the individual, probation is more properly viewed as a "valuable tool to be used by the state in a battle against recidivism."

*Id.* Other factors also go into the consideration of whether an individual should be placed on parole or probation. In addition to the battle against recidivism, these factors include the following:

(1) the cost of supervising an individual on probation is significantly less than those incurred in keeping an individual in prison;[2]

(2) the use of probation maximizes an individual's liberty but at the same time vindicates the authority of law and protects society;

(3) an individual's effective reintegration into the community is significantly easier if he or she has been on probation instead of having served a prison term; and

(4) the impact of the individual's conviction upon innocent dependents is minimized when that individual is on probation. *See Wolfe, supra,* 99 Idaho at 386, 582 P.2d at 737.

■ Given these considerations, we hold that a judge's decision to place an individual on probation does *not* constitute a *finding* or a *judgment* about the individual's potential for rehabilitation. Because collateral estoppel requires a final judgment on a specific issue of which a party is seeking to preclude relitigation, *see Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation,* 402 U.S. 313, 323, 91 S.Ct. 1434, 1439–40, 28 L.Ed.2d 788 (1971), and because we do not have such a judgment or finding here, we reject Chapman's argument on this point.

■ We likewise reject Chapman's double jeopardy argument. In *State v. Alanis,* 109 Idaho 884, 712 P.2d 585, 595 (1985), this Court stated the purposes of both the federal and state double jeopardy clauses—found respectively in the Fifth Amendment to the United States Constitution and art. 1, § 13 of the Idaho Constitution—included

**2.** In *Wolfe,* this Court noted that in 1978, the cost of supervising one person on probation was approximately 86 cents per day, or $313.90 per year. The cost of keeping one inmate in a state prison was 20 times greater, amounting to $18.86 per day, or $6,876.60 per year. *Id.* 99 Idaho at 385–86, 582 P.2d at 731–32.

protecting "criminal defendants from multiple trials ... and multiple punishments for the same offense." (Citations omitted.)

Revocation of probation constitutes neither a multiple trial nor a multiple punishment; it does not involve a new trial to consider the guilt or innocence of matters already decided, and it does not involve an additional punishment, because the revocation of probation involves only the enforcement of conditions already imposed. Accordingly, for the foregoing reasons, we affirm the district court.

DONALDSON, C.J., SHEPARD and HUNTLEY, JJ., and TOWLES, J., Pro Tem., concur.