30 P.3d 293

**STATE of Idaho, Plaintiff–Respondent,**

v.

**John D. COASSOLO, Defendant–Appellant.**

**No. 26948.**

Supreme Court of Idaho.
Moscow, April 2001 Term.

July 27, 2001.

Ronaldo A. Coulter, State Appellate Public Defender, Boise; University of Idaho Legal Aid Clinic, Maureen E. Laflin, Supervising Attorney, Moscow, for appellant. Marc D. Brown argued.

Hon. Alan G. Lance, Attorney General, Boise; Rebekah A. Cude, Special Deputy Attorney General, Moscow, for respondent. Rebekah A. Cude argued.

TROUT, Chief Justice.

This is an appeal from the district judge's Order Relinquishing Jurisdiction and Order Denying Motion For Reconsideration of Sentence.

## I.

### FACTUAL AND PROCEDURAL HISTORY

John Daniel Coassolo ("Coassolo") was charged with aiding and abetting the delivery of methamphetamine. Pursuant to a plea agreement, Coassolo pleaded guilty to the charge in exchange for the state's dismissal of an unrelated case in which Coassolo was charged with possession of methamphetamine. After considering a presentence investigation report (PSI) and other evidence presented at the sentencing hearing, the district judge sentenced Coassolo to a unified term of imprisonment of eight years with four years determinate. Pursuant to I.C. § 19-2601(4), the district judge suspended execution of the sentence, retained jurisdiction for 120 days, placed Coassolo in the "rider program" at the North Idaho Correctional Institution ("NICI"), and ordered him to return to the court for review of the sentence upon completion of the program. Near the end of the 120-day period, the NICI submitted an addendum to the PSI recommending the judge relinquish jurisdic-tion. Coassolo declined an opportunity to submit comments to the report for the district judge's consideration. Upon considering the amended PSI the district judge relinquished jurisdiction. Neither the NICI nor the district judge provided Coassolo with a hearing at which to contest the content of the addendum to the PSI.

Thereafter, Coassolo filed a Motion for Reconsideration of Sentence pursuant to Idaho Criminal Rule ("I.C.R.") 35. The district judge denied the motion.

Coassolo appealed the Order Relinquishing Jurisdiction and the denial of his motion for a more lenient sentence, which appeal was assigned to the Court of Appeals. The Court of Appeals held that the 1995 amendment to I.C. § 19-2601(4), which eliminated hearings at the NICI on the accuracy of amendments to the PSI, was unconstitutional because it attempted to eliminate the due process required to protect Coassolo's liberty interest in the accuracy of the NICI's report. Since Coassolo had been denied due process of law, the Court of Appeals reversed and remanded the Order Relinquishing Jurisdiction.

The state filed a timely Petition for Review with this Court, which petition was granted.

## II.

### STANDARD OF REVIEW

When considering a case on review from the Court of Appeals, this Court gives serious consideration of the views of the Court of Appeals; however, this Court reviews the trial court's decisions directly. *State v. Benefiel,* 131 Idaho 226, 228, 953 P.2d 976, 978 (1998) (citing *State v. Avelar,* 129 Idaho 700, 702, 931 P.2d 1218, 1220 (1997)).

## III.

### DISCUSSION

**A. Coassolo Does Not Possess A Constitutionally Protected Liberty Interest That Would Require A Hearing Before The District Judge Relinquishes Jurisdiction.**

Constitutional issues and the construction and application of legislative acts

are pure questions of law over which this Court exercises free review. *Struhs v. Prot. Tech., Inc.*, 133 Idaho 715, 718, 992 P.2d 164, 167 (1999).

Idaho's retained jurisdiction statute provides:

> Whenever any person shall have been convicted, or enter a plea of guilty, in any district court of the state of Idaho, of or to any crime against the laws of the state, except those of treason or murder, the court in its discretion may:
>
> . . . .
>
> 4. Suspend the execution of judgment at any time during the first one hundred eighty (180) days of a sentence to the custody of the state board of correction. The court shall retain jurisdiction over the prisoner for the first one hundred eighty (180) days. . . . The prisoner will remain committed to the board of correction if not affirmatively placed on probation by the court. Placement on probation shall be under such terms and conditions as the court deems necessary and expedient. The court in its discretion may sentence a defendant to more than one (1) period of retained jurisdiction after a defendant has been placed on probation in a case. *In no case shall the board of correction or its agent, the department of correction, be required to hold a hearing of any kind with respect to a recommendation to the court for the grant or denial of probation.* Probation is a matter left to the sound discretion of the court. Any recommendation made by the department to the court regarding the prisoner shall be in the nature of an addendum to the presentence report. . . .

I.C. § 19–2601 (Supp.2000) (emphasis added).

Prior to the 1995 amendment to the statute, which added the language emphasized above, hearings on the accuracy of evaluations were held by the NICI before the submission of recommendations to the district judge. The hearings were conducted pursuant to this Court's decision in *State v. Wolfe*, 99 Idaho 382, 582 P.2d 728 (1978), which required that:

The prisoner must be given adequate notice before the hearing, including notice of the substance of all matters that will be considered. The prisoner must be given an opportunity to explain or rebut any testimony or recommendations. In addition, the prisoner must be free to call witnesses in his behalf from among the employees and other prisoners at NICI. This information should be included in the report sent back to the sentencing judge. *Id.* at 389, 582 P.2d at 735. The Court imposed these requirements based upon its holding "that a prisoner, as well as the state, does have a substantial interest in the fairness of the due process used to determine his status." 99 Idaho at 387, 582 P.2d at 733. Subsequent decisions of this Court, without questioning the basis for the interest, have clarified that the term "substantial interest" refers to a constitutionally protected liberty interest. *See e.g., Smith v. Idaho Dep't of Corr.*, 128 Idaho 768, 771, 918 P.2d 1213, 1216 (1996); *State v. Chapman*, 111 Idaho 149, 151, 721 P.2d 1248, 1250 (1986); *State v. White*, 107 Idaho 941, 942, 694 P.2d 890, 891 (1985); *State v. Machen*, 100 Idaho 167, 169, 595 P.2d 316, 318 (1979) (determining whether *Wolfe* should be applied retroactively by applying "three criteria for determining whether a judicial decision *affecting constitutional rights* should be applied retrospectively or prospectively" (emphasis added)).

One year after this Court decided *Wolfe*, the United States Supreme Court decided *Greenholtz v. Inmates of the Neb. Penal and Corr. Complex*, 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979). In *Greenholtz*, a group of inmates brought a civil rights action against the Nebraska State Board of Parole claiming that the Board's actions in considering the suitability of inmates for parole violated due process. The inmates reasoned, much as this Court and several federal circuit courts had, *see Wolfe*, 99 Idaho 382, 582 P.2d 728 (citing e.g., *Childs v. United States Bd. of Parole*, 511 F.2d 1270 (D.C.Cir.1974); *United States ex rel. Johnson v. Chairman, N.Y. State Bd. of Parole*, 500 F.2d 925 (2d Cir.1974)), that the United States Supreme Court's decision in *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), which found that parolees have a pro-

tectible liberty interest that cannot be taken away without due process of law, meant that the prisoners also had a protectible interest in the possibility of parole. The inmates in *Greenholtz* stated the argument as: "the ultimate interest at stake both in a parole-revocation decision and in a parole determination is conditional liberty and that since the underlying interest is the same the two situations should be accorded the same constitutional protection." 442 U.S. at 9, 99 S.Ct. at 2105. In *Wolfe* this Court used the word "substantial" rather than "ultimate" and characterized the interest as being in "status" rather than "conditional liberty", but the theory is the same. The United States Supreme Court rejected the argument.

> The fallacy in respondents' position is that parole *release* and parole *revocation* are quite different. There is a crucial distinction between being deprived of a liberty one has, as in parole, and being denied a conditional liberty that one desires. The parolees in *Morrissey* (and probationers in *Gagnon*) were at liberty and as such could "be gainfully employed and [were] free to be with family and friends and to form the other enduring attachments of normal life." The inmates here, on the other hand, are confined and thus subject to all of the necessary restraints that inhere in a prison.

*Id.* at 9, 99 S.Ct. at 2105 (citation omitted).

In addition to federal case law, the Court in *Wolfe* relied upon Idaho case law discussing "probation application" hearings. In reality, there are no probation application hearings in Idaho. The term probation application hearing merely refers to the trial court's consideration of a clemency request at the time of sentencing. If the trial court fails to consider the application at sentencing, the remedy is to vacate the sentence and remand for a reconsideration of the sentence. *See, e.g., State v. Freeman*, 85 Idaho 339, 379 P.2d 632 (1963). The cases discussing probation application hearings relate to liberty interests at sentencing, not at the expiration of retained jurisdiction. "[I]n Idaho, sentence is imposed initially and not when the retained jurisdiction expires."

*Wolfe*, 99 Idaho at 389 n. 2, 582 P.2d at 735 n. 2.

Since the reasoning and case law used by this Court in *Wolfe* is inapplicable or overruled, *see, e.g., Brandon v. D.C. Bd. of Parole*, 823 F.2d 644 (D.C.Cir.1987) (finding *Greenholtz* effectively overruled the Circuit's decision in *Childs*, 511 F.2d 1270); *Pugliese v. Nelson*, 617 F.2d 916, 923 (2d Cir.1980) ("In light of *Greenholtz*, however, *United States ex rel. Johnson* no longer represents the law."), we find it necessary to revisit the issue of whether Idaho's retained jurisdiction statute creates a constitutionally protected liberty interest.

Due process rights may arise under the Idaho or the United States Constitutions. Although the scope of these constitutional provisions is not necessarily the same, in cases involving the deprivation of a liberty interest this Court has applied the United States Supreme Court's standard for interpreting the due process clause of the United States Constitution to Article I, Section 13 of the Idaho Constitution. *Smith*, 128 Idaho 768, 771, 918 P.2d 1213, 1216 (1996) (citing *Cootz v. State*, 117 Idaho 38, 40, 785 P.2d 163, 165 (1989); *Chapman*, 111 Idaho at 150–51, 721 P.2d at 1249–50). More specifically, we have applied the same standard to determine whether an inmate has a liberty interest under the Idaho Constitution as applies to the United States Constitution. *See Schevers v. State*, 129 Idaho 573, 578, 930 P.2d 603, 608 (1996) (applying the standard used under the Fourteenth Amendment to art. I, § 13 of the Idaho Constitution for determining whether a prison disciplinary action infringes a liberty interest); *Wolfe*, 99 Idaho at 387, 582 P.2d at 733 (providing one analysis for the claim that the retained jurisdiction program created a liberty interest under Idaho and United States Constitutions). In the present case, there is no reason to expand the due process concept of liberty under the Idaho Constitution beyond the contemplation of the Fourteenth Amendment.

■ We first note that the constitutional protections required at sentencing are not applicable to the retained jurisdiction program because sentencing occurs before the period of retained jurisdiction, not when jur-

isdiction is relinquished. *State v. Ditmars,* 98 Idaho 472, 473, 567 P.2d 17, 18 (1977); *Wolfe,* 99 Idaho at 389 n. 2, 582 P.2d 735 n. 2. Upon the valid conviction and sentencing of a defendant, due process having been provided, the state may deprive the defendant of his liberty for the term of the sentence pronounced by the district judge. *Greenholtz,* 422 U.S. at 7, 99 S.Ct. at 2104 (citing *Meachum v. Fano,* 427 U.S. 215, 224, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451 (1976)). If the state chooses to give a prisoner back some of his liberty or a right to his liberty by granting him parole, probation, good time credits, or an expectation of parole, the state must once again provide the prisoner with due process before removing the liberty. *See e.g., Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (under the circumstances, good time credits could not be removed without due process); *Gagnon v. Scarpelli,* 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973) (probation cannot be revoked without a hearing); *Morrissey,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (parole cannot be revoked without a hearing). When the state has not given back a liberty interest, no due process is necessary to continue the denial of the liberty interest. *See Greenholtz,* 422 U.S. at 11, 99 S.Ct. at 2105.

■ The decision to relinquish jurisdiction or grant probation is committed to the district judge's discretion. *State v. Merwin,* 131 Idaho 642, 648, 962 P.2d 1026, 1032 (1998). The NICI's recommendation is "purely advisory and is in no way binding upon the court['s]" decision. *Id.* Since a judge need not follow the recommendation of the NICI and the ultimate decision is discretionary, the chance of probation based upon an NICI recommendation is at most a mere possibility or a "coveted goal". *Wolfe,* 99 Idaho at 386, 582 P.2d at 732. According to the United States Supreme Court:

> [T]o obtain a protectible right "a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead have a legitimate claim to entitlement to it."

*Greenholtz,* 442 U.S. at 7, 99 S.Ct. at 2103–04 (1979) (quoting *Bd. of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548). "That the state holds out the *possibility* of [probation at the end of retained jurisdiction] provides no more than a mere hope that the benefit will be obtained." *Id.* at 11, 99 S.Ct. at 2105.

■ Furthermore, the interest of the state and the prisoner in the fairness and accuracy of the report is not a constitutionally protected liberty interest. An accurate report may recommend against probation and an inaccurate one for probation. It is the chance for freedom and not the accuracy or fairness of the report that is relevant in determining whether a liberty interest exists. As we have previously found, liberty interests are "generally limited to freedom from restraint". *Schevers,* 129 Idaho at 576, 930 P.2d at 606 (quoting *Sandin v. Conner,* 515 U.S. 472, 484, 115 S.Ct. 2293, 2300, 132 L.Ed.2d 418 (1995)). To the extent *Wolfe* provides for a protected liberty interest in the NICI report or process in preparing that report, it is specifically overruled by this Court.

In holding that Coassolo does not have a constitutionally protected liberty interest, we do not intend to impugn the value of the rider program. The program is very valuable in that it provides the defendant with a prison-like experience, preliminary drug treatment, and an opportunity to demonstrate a change in attitude and willingness to abide by the terms of probation. In order to make the system work, it is important for the district judge to a have a report from the NICI on their assessment of the defendant's conduct while participating in the rider program. In the interest of fair judicial process, the district judge should also receive in writing any response the defendant may choose to make to the NICI recommendation. The district judge may then, if the judge feels it necessary, hold a hearing, but it is not constitutionally necessary. *See Ditmars,* 98 Idaho at 475, 567 P.2d at 20.

Since Coassolo did not have a constitutionally protected liberty interest, the procedures followed by the NICI and the district judge did not violate Coassolo's due process rights. We, therefore, affirm the Order Relinquishing Jurisdiction.

## B. The District Judge Did Not Abuse His Discretion In Denying Coassolo's I.C.R. 35 Motion For Reconsideration Of Sentence.

A motion to reduce an otherwise lawful sentence is "essentially a plea for leniency, and a decision on such a motion is vested within the sound discretion of the sentencing court." *State v. Wersland*, 125 Idaho 499, 504, 873 P.2d 144, 149 (1994). In reviewing the denial of an I.C.R. 35 motion, we determine whether the trial court abused its discretion, applying the same standards that are used to evaluate the reasonableness of the original sentence. *State v. Shiloff*, 125 Idaho 104, 107, 867 P.2d 978, 981 (1994).

Coassolo claims his sentence is excessive because he will be unable to receive drug rehabilitation until one year or less before his parole hearing. A sentence is not excessive simply because it will delay a criminal's drug treatment. If this Court were to adopt the standard for an abuse of discretion urged by Coassolo, every criminal needing drug treatment would have to be sentenced with a possibility of parole within one year of imprisonment. Imprisonment, however, is not solely for the purpose of providing criminals with drug treatment. In addition to rehabilitation, imprisonment serves the purposes of deterrence, retribution, and protection of society. After reviewing the record we cannot find an abuse of discretion. Past attempts at rehabilitation and probation have failed to provide Coassolo with the incentive he needs to take his drug problem seriously and become a law-abiding citizen. We, therefore, affirm the denial of Coassolo's Rule 35 motion for reconsideration of sentence.

## IV.

## CONCLUSION

Idaho's retained jurisdiction statute does not provide Coassolo with a constitutionally protected liberty interest that would require a hearing before jurisdiction is relinquished. Therefore, the procedures followed by the district judge in relinquishing jurisdiction did not violate Coassolo's due process rights. The district judge did not abuse his discre-tion in denying Coassolo's Rule 35 motion for reconsideration of sentence. The orders relinquishing jurisdiction and denying the motion for reconsideration of sentence are affirmed.

Justices WALTERS, KIDWELL and EISMANN, CONCUR.

Justice SCHROEDER, dissenting.

I respectfully dissent from that portion of the Court's decision that determines Coassolo does not possess a constitutionally protected liberty interest that requires a hearing before the district judge relinquishes jurisdiction. Doubtless the legislature can determine that no such hearing is necessary before the board or department of correction. Nevertheless, the due process right of an inmate to be heard in some meaningful manner and forum remains.

In *Wolfe*, this Court placed responsibility for the conduct of a hearing with the department of correction. The logic and practicality of that decision were obvious. The inmate and virtually all persons who would have relevant information were at the site where the inmate was held. The report to the judge would include this information so the judge would have a full statement upon which to base a decision. The procedure centralized the process instead of casting that burden to forty-four sites within the state where hearings might be held, often far from the location of witnesses and documentary material. However, the fact that a different system may be less efficient and more costly does not preclude its implementation. The due process right remains and must be satisfied in a meaningful way.

*Greenholtz* bears a strong resemblance to the facts of this case, but that resemblance is not a mirror image nor sufficiently reflected to determine that the logic of *Wolfe* is undermined. *Greenholtz* involved a parole revocation hearing. The sentencing process by the court had concluded. The only question that remained was whether the facts warranted a release through an administrative process. The retained jurisdiction process is distinguishable.

When the district court utilizes retained jurisdiction, sentencing by the court has not been completed. The district court may drop jurisdiction, in which case the defendant serves the sentence originally imposed. On the other hand, the district court may modify the sentence by shortening either the total sentence or the mandatory term that must be served. In most instances the primary consideration is whether to grant probation and suspend the balance of the sentence.

There are no doubt different motivations in the minds of district judges in retaining jurisdiction, but it is safe to say that in the majority of cases the judges have not completed the sentencing process. If the defendant fails to meet the goals of the retained jurisdiction, the judge may take no action, and the defendant serves the sentence originally imposed. But even this choice is a conscious decision arrived at based upon information submitted for the judge's consideration. The other alternatives require a similar thought process. Has the defendant shown the capacity to be placed on probation, avoiding the consequence of further incarceration in the penitentiary? In court proceedings for many years district judges have told defendants that if they do well they will be placed on probation. That is a primary goal of the program based upon the notion that both society and the individual defendant may benefit if the financial and human costs of continued incarceration are avoided.

In short, the district court's role in sentencing is not complete until the judge makes a decision at the end of the retained jurisdiction. This conclusion is buttressed by the language of I.C. § 19–2601 that, "[a]ny recommendation by the department to the court regarding the prisoner shall be in the nature of an addendum to the presentence report." The title "presentence report" is self-explanatory—it is a report created prior to sentencing. Anything that is "in the nature of an addendum to the presentence report" invokes the defendant's right to be heard prior to final sentencing by the court. In the past that forum was at the correctional facility where those most concerned were located. Before final sentencing the district court had the assurance that a fair process of evalua-

tion existed. I.C. § 19–2601 removes that convenient and economical forum. It does not, however, eliminate the due process right of a defendant to be heard in a meaningful manner before final sentence is pronounced.