# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket Nos. 38212/38213

STATE OF IDAHO,

      Plaintiff-Respondent,

v.

ABRAHAM SCRAGGINS, JR.,

      Defendant-Appellant.

Boise, November 2012 Term

2012 Opinion No. 148

Filed: December 20, 2012

Stephen W. Kenyon, Clerk

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County.  Hon. Michael E. Wetherell, District Judge.

The district court orders revoking probation are <u>affirmed.</u>

Sara B. Thomas, State Appellate Public Defender, Boise, for appellant. Erik R. Lehtinen argued.

Honorable Lawrence G. Wasden, Attorney General of Idaho, Boise, for respondent. Kenneth K. Jorgensen argued.

_____

J. JONES, Justice.

This is a consolidated appeal of district court orders revoking Abraham Scraggins' probation in two separate, but related, cases. Because we find that Scraggins' Fourteenth Amendment due process rights were not violated, we affirm.

## I.
## FACTUAL AND PROCEDURAL HISTORY

Scraggins was convicted of sexual battery of a minor in 1993, which required that he register as a sex offender in Idaho. On April 24, 2009, the State charged him with failure to register when he moved to Ada County in 2008 (First Case). Scraggins entered a guilty plea to the charge and on August 24, 2009, the district court imposed a unified sentence of ten years, five of which were fixed, but suspended the sentence and placed Scraggins on probation. Among the terms and conditions of his probation was that:

1

Defendant shall serve an additional [180] days in the Ada County Jail at the discretion of the probation officer, without prior approval of the Court. The probation officer has the discretion and authority to immediately deliver Defendant to the Sheriff for incarceration in the county jail for the purpose of having Defendant serve this discretionary time and the Sheriff shall commit the Defendant to serve this time on request of the probation officer without further order from the Court. The probation officer shall immediately file with the Court a written statement of the reasons Defendant has been placed in custody, for review by the Court.

About one month after sentencing, the State moved to revoke Scraggins' probation, alleging that he had violated the terms of probation by drinking alcohol and by failing to stay at his registered address for a nine-day period. In October of 2009, the State charged Scraggins with two additional counts for failing to register as a sex offender (Second Case). Pursuant to a plea agreement, Scraggins admitted to the probation violation in the First Case and pleaded guilty to one count of failing to register in the Second Case. The district court revoked Scraggins' probation in the First Case, ordered his sentence executed, and retained jurisdiction. At the same time, the court imposed a unified ten-year sentence, with five and one-half years fixed, in the Second Case. The district court also retained jurisdiction in the Second Case. Following the retained jurisdiction period, the court "ascertained the desirability of suspending execution of judgment and placing [Scraggins] on probation" in both cases, and did so. Once again, the terms of this new round of probation provided for 180 days of discretionary jail time.

Less than two months later, probation officers "were performing a residence check[]" at Scraggins' residence, and "noticed [Scraggins] riding his bike into the parking lot after curfew." Scraggins admitted to the officers that he had consumed alcohol and contacted the victim of his sexual battery—both violations of the terms of his probation.[1] Accordingly, "in lieu of filing a report of violation," Scraggins was jailed and served ten days of the discretionary jail time previously authorized by the district court.

---

[1] Scraggins' probation terms provided that:

> 9.     Defendant shall not purchase, possess or consume any alcoholic beverages while on probation.
>
> . . .
>
> 22.    Defendant shall have no contact with [the victim].
>
> 23.    A no contact order has been issued in this case. A no contact order means NO CONTACT. No contact directly, no contact indirectly, no contact through third persons, no contact by mail, no contact by phone, no contact over the internet—NO CONTACT—a violation of the no contact order by the Defendant if proven or admitted, will violate a fundamental condition of probation and will result in imposition of the underlying sentence.

After serving his discretionary jail time, Scraggins met with his probation officer, who determined that Scraggins should be "brought before the court for further disposition of the case," and that, if he was "found to have violated the terms of his probation," his probation should be revoked and the original sentence imposed. Scraggins later admitted to the district court that he violated his probation in both cases by missing his curfew, consuming and possessing alcohol, and contacting the victim of his underlying offense. But at the disposition hearing, Scraggins objected to the district court revoking his probation based on these violations. He argued that because he "had been punished already for this exact same conduct" by serving discretionary jail time, and because "there is no new conduct that he has been found in violation for," that a revocation of probation would be a violation of his due process rights.

The district court rejected this argument, and accordingly revoked his probation in both cases. It then ordered that the sentences in both cases be executed. Scraggins timely appealed to this Court, which consolidated the cases on appeal.

## II.
## ISSUE ON APPEAL

I.  Does a district court's revocation of probation, based on violations for which a probationer has already served discretionary jail time, violate the due process clause of the Fourteenth Amendment?

## III.
## DISCUSSION

### A. Standard of Review.

Constitutional issues, such as this one, "are questions of law over which [this Court exercises] free review." *Urban Renewal Agency of City of Rexburg v. Hart*, 148 Idaho 299, 300, 222 P.3d 467, 468 (2009).

### B. A revocation of probation, based on violations for which a probationer has already served discretionary jail time, does not violate the due process clause of the Fourteenth Amendment.

In the October 14, 2010 disposition hearing, the district court addressed Scraggins' contention that a revocation of probation, for the very same violations for which he had already been punished, would violate his due process rights. Though there is no case law directly on point, the district court noted that:

3

> [W]hat this Court's practice has been for eight years . . . [is] that I don't require the probation officer to file a violation of probation. That's their call, not mine because [the Defendant] is under the supervision of the Department. If they choose to impose discretionary jail time, discretionary jail time is granted as a term and condition of probation.

Further, the district court concluded that, "this is not a situation of double punishment or double jeopardy. And the fact that discretionary jail time can be imposed does not preclude the filing of the same charge as a probation violation if the probation officer determines that that is appropriate."

On appeal, Scraggins concedes the lack of relevant Idaho case law. However, he cites to United States Supreme Court precedent that, he argues, indirectly "demand a conclusion that probation cannot, consistent with the due process guarantee of the Fourteenth Amendment, be revoked solely on past violations that were previously punished through imposition of discretionary jail time." His contention is that punishing a defendant by revoking probation, after imposing a discretionary jail sentence for the same probation violations, is "fundamentally [unfair]." Scraggins further argues that there is a "promise that is implied when an individual is placed on probation or parole—the promise that the government will punish a violation either through intermediate sanctions *or* revocation, but not both."

The State responds that the authority cited by Scraggins is inapplicable and that "fundamental fairness . . . is not a freestanding claim that allows a defendant to avoid proving a violation of a recognized due process right." It contends Scraggins failed to argue that any recognizable due process right of his was violated, "nor could he[,] because he was afforded all his rights during the course of his probation revocation proceedings."

The Fourteenth Amendment to the United States Constitution provides that "[n]o State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law." Determining what process is due "is not a technical conception with a fixed content unrelated to time, place and circumstance." *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976) (quoting *Cafeteria Workers v. McElroy*, 367 U.S. 886, 895 (1961)). Rather, it is a flexible inquiry that calls for procedural protections that are demanded by the particular situation at hand. *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). With regard to termination of parole, those protections are set forth in *Morrisey*. *Id.*, at 481–85; *see also State v. Rogers*, 144 Idaho 738,

4

742–43, 170 P.3d 881, 885–86 (2007). In *Morrissey*, the Supreme Court held that before the government could revoke a parolee's parole, due process requires the following:

> (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole. We emphasize there is no thought to equate this second stage of parole revocation to a criminal prosecution in any sense. It is a narrow inquiry; the process should be flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial.

408 U.S. at 489.

With regard to the revocation of probation, the Court subsequently held that "a probationer, like a parolee, is entitled to a preliminary and a final revocation hearing, under the conditions specified in *Morrissey*." *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973). Thus, the State "must provide the same process [found in *Morrissey*] when terminating a probationer from probation." *Rogers*, 144 Idaho at 742–43, 170 P.3d at 885–86. As a fundamental matter, this Court has affirmed the *Morrissey* and *Gagnon* holdings that "[p]robationers do not enjoy the full panoply of constitutional protections afforded criminal defendants." *State v. Rose*, 144 Idaho 762, 765, 171 P.3d 253, 256 (2007). Nevertheless, "a probationer has a protected liberty interest in continued probation, and is therefore entitled to due process before probation may be revoked"—thus, we look first to *Morrissey* and *Gagnon* for those minimum due process requirements. *Id.* at 766, 171 P.3d at 257.[2]

Several Idaho cases further shape the contours of proper due process in the context of probation revocation. In *State v. Chapman*, 111 Idaho 149, 151, 721 P.2d 1248, 1250 (1986), this Court considered whether a probation officer violated due process when he allegedly failed to investigate "the circumstances of the probation violations" and the defendant's behavior while on probation. We held that due process was not violated, and in doing so found that a district court has flexibility to evaluate a broad range of information regarding a defendant's personality. This Court noted that:

---

[2] In oral argument before this Court, Scraggins' counsel acknowledged that Scraggins had not been deprived of any of the procedural due process protections specified in *Morrissey* and *Gagnon*.

The teachings of *Morrissey, Gagnon, Edelblute,* and *Moore* are clear. They unequivocably [sic] state that the *reason* for the attachment of due process protection to proceedings such as we have here is "to assure that the finding of a parole [or probation] violation will be based on *verified* facts and that the exercise of discretion will be informed by an *accurate* knowledge of the parolee's behavior.

*Chapman*, 111 Idaho at 152, 721 P.2d at 1251 (quoting *Morrissey*, 408 U.S. at 484). Because we found that "the record shows that this information was considered and was sufficient to permit the district court to exercise its discretion properly," and that the probationer "had full opportunity to submit evidence," the district court's decision to revoke probation was affirmed. *Id.* at 152−53, 721 P.2d at 1251−52.

This Court has also considered whether time spent in jail as a condition of probation should be credited toward a defendant's jail sentence when probation is revoked. *State v. Dana*, 137 Idaho 6, 43 P.3d 765 (2002). In *Dana*, we found that probation time served "arose independently as a [probation] condition, and not under Idaho Code [criminal punishment statutes]," and accordingly, that the time served is not part of a probationer's sentence. *Id.* at 9, 43 P.3d at 768. Though the decision in *Dana* was grounded in *stare decisis*, and not due process, our elucidation of the policy behind probation is relevant here:

The purpose of probation is rehabilitation, which is facilitated by giving the defendant a strong motivation to comply with the law by holding conditions over him. *See State v. Wilson*, 100 Idaho 725, 726, 604 P.2d 739, 740 (1979). If the *Banks* rationale[3] were not followed, that would of course reduce the motivation of a defendant who was on probation to comply with the law by decreasing the severity of the consequences for noncompliance.

*Id.* at 8, 43 P.3d at 767.

Here, we hold that a revocation of probation, based on violations for which the probationer has already served discretionary jail time, is not a violation of due process. This is because no case—federal or state—has identified any such due process right. *Morrissey*, recognized by this Court as "seminal," established a set of procedures that must be followed before parole is revoked. *Morrissey*, 408 U.S. at 489; *see Rogers*, 144 Idaho at 742, 170 P.3d at 885. *Gagnon* later applied these same procedures to probationers facing revocation. *Gagnon*, 411

---

[3] In *State v. Banks*, this Court similarly found that a probationer was "not entitled to credit for the time he voluntarily surrendered to gain probation." 121 Idaho 608, 610, 826 P.2d 1320, 1322 (1992) (citing *State v. Gawron*, 112 Idaho 841, 843, 736 P.2d 1295, 1297 (1987)).

U.S. at 782. But neither of these cases held that probationers have a due process right to not have probation revoked for violations for which they have already been disciplined pursuant to the terms of a probation order. Here, the only procedures articulated by *Morrissey* and *Gagnon* were adhered to, and Scraggins did not dispute this. Thus, his due process rights were not violated.

What Scraggins basically seeks is an extension of *Morrissey* and *Gagnon*—he submits that the spirit of those cases "demand[s] a conclusion that probation cannot . . . be revoked solely on past violations that were previously punished through imposition of discretionary jail time." And although the *Morrissey* Court did acknowledge that it could not "write a code of procedure; that is the responsibility of each State," and that some states have done so by "judicial decision usually on due process grounds," there is no such judicial decision that warrants such an extension. *Morrissey*, 408 U.S. at 488. No Idaho or federal cases have found the due process right that Scraggins proposes. Scraggins cites to other states' case law, but none truly address the issue at hand, let alone "demand" that this Court extend *Morrissey* and *Gagnon*, and Idaho's due process jurisprudence, beyond their current limits.

Finally, as a matter of policy, finding a new due process right here would likely eventuate our concerns from *Dana*, where care was taken to avoid "reduc[ing] the motivation of a defendant who was on probation to comply with the law by decreasing the severity of the consequences for noncompliance." *Dana*, 137 Idaho at 8, 43 P.3d at 767. Here, Scraggins was repeatedly warned in the plainest of terms that violation of his no-contact order would "violate a fundamental condition of probation and [would] result in imposition of the underlying sentence." Nonetheless, Scraggins admittedly violated this order by contacting the victim of his prior crime. And if the district court was subsequently unable to enforce its order, and not impose revocation after it essentially promised the same, it would significantly decrease both the district court's flexibility and the severity of consequences; in other words, the *Dana* Court's "reduced motivation" scenario would likely come to pass. Declining to find a due process right here prevents such an outcome for both Scraggins and future probationers, and preserves the flexibility of the district court.

In sum, the probation officer imposed jail time per the discretion previously granted in the probation order, and the district court revoked Scraggins' probation per the terms of the order. Neither course of action was contrary to the terms of Scraggins' probation, and neither affected any articulable due process right. Therefore, we hold that a revocation of probation,

based on probation violations that have already led to discretionary jail time, does not violate a probationer's due process rights.

## IV.
## CONCLUSION

For the foregoing reasons, we affirm the district court's orders revoking Scraggins' probation.


Chief Justice BURDICK, and Justices EISMANN, W. JONES, and HORTON CONCUR.