**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 41916**

| | |
|---|---|
| STATE OF IDAHO, | ) 2015 Opinion No. 80 |
| | ) |
| Plaintiff-Respondent, | ) Filed: December 4, 2015 |
| | ) |
| v. | ) Stephen W. Kenyon, Clerk |
| | ) |
| WILLIAM DEE VAN KOMEN, JR., | ) |
| | ) |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County. Hon. John T. Mitchell, District Judge.

Order relinquishing jurisdiction and executing a unified five-year sentence with two years determinate for possession of a controlled substance with intent to deliver, <u>affirmed</u>.

Sara B. Thomas, State Appellate Public Defender; Justin M. Curtis, Deputy Appellate Public Defender, Boise, for appellant. Maya P. Waldron argued.

Hon. Lawrence G. Wasden, Attorney General; Nicole L. Schafer, Deputy Attorney General, Boise, for respondent. Nicole L. Schafer argued.

---

GRATTON, Judge

William Dee Van Komen, Jr., appeals from the district court's order relinquishing jurisdiction and executing a unified five-year sentence with two years determinate for possession of a controlled substance with intent to deliver. Van Komen asserts the district court violated his Fifth Amendment right against self-incrimination by considering his refusal to submit to a polygraph evaluation in deciding to relinquish jurisdiction at his retained jurisdiction review hearing. We affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

In 2010, Van Komen pled guilty to possession of a controlled substance with the intent to deliver, Idaho Code § 37-2732(a)(1)(B), and possession of drug paraphernalia, I.C. § 37-2734A.

1

The district court imposed a unified five-year sentence with two years determinate and retained jurisdiction. Following the period of retained jurisdiction, the district court placed Van Komen on probation for five years.

In February 2013, the State filed a probation violation report alleging Van Komen had consumed alcohol, driven under the influence of alcohol, and consumed a controlled substance. Van Komen admitted to violating his probation, and the court continued his probation. In August 2013, the State filed a second probation violation report alleging Van Komen failed to report for drug testing and was having a relationship with a sixteen-year-old female (A.O.) who was on juvenile probation. Van Komen admitted to violating the terms of his probation, and the district court revoked his probation and again retained jurisdiction.

In retaining jurisdiction for the second time, the court also ordered that Van Komen submit to a polygraph examination "to assess truthfulness as to (1) no drugs or alcohol after March 28th, 2013, and (2) the extent of sexual activity with [A.O.]." Encouraging Van Komen to be truthful regarding these issues, the court stated:

> If you test deceptive as to either of those things, then I will likely impose the prison sentence, have you serve the rest of your time in prison regardless of whether you do well on the rider. If you want to change your story, now would be the time to do it. If you test deceptive after this on either of those two questions, I'll send you to prison.

Van Komen then spoke with his attorney, who informed the court that "[Van Komen will] agree to the polygraph arrangement, Your Honor. He didn't use, and he didn't have any--I don't know what sexual activity means."

At Van Komen's review hearing following the second period of retained jurisdiction, the court inquired as to whether Van Komen submitted to the previously ordered polygraph examination. In response to the court's inquiry, Van Komen's counsel stated, "I don't think there would be an issue in regards to drugs, Judge. However, in regards to any potential crime, uh, regarding some contact with the individual who I believe is a minor, I would advise him to assert his Fifth Amendment rights as to that."

The district court relinquished jurisdiction and imposed Van Komen's underlying sentence, giving him credit for his time served. In doing so, the court stated:

> The reason that I am revoking your probation is you haven't done what I ordered you to do when I sent you on a rider, and that was to get a polygraph evaluation to assess both the truthfulness of no alcohol or drugs after March 28, 2013, and the extent of any sexual activity with [A.O.].

2

The court then expressed concern that Van Komen may have been attempting to contact A.O. during the period of retained jurisdiction, and stated that Van Komen had failed to make progress as to his ability to comply with orders and the law. Van Komen timely appeals.

## II.

## ANALYSIS

Van Komen claims the district court abused its discretion when it relinquished jurisdiction in this case. The decision to place a defendant on probation or whether, instead, to relinquish jurisdiction over the defendant is a matter within the sound discretion of the district court and will not be overturned on appeal absent an abuse of that discretion. *State v. Hood*, 102 Idaho 711, 712, 639 P.2d 9, 10 (1981); *State v. Lee*, 117 Idaho 203, 205-06, 786 P.2d 594, 596-97 (Ct. App. 1990). When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine: (1) whether the lower court correctly perceived the issue as one of discretion; (2) whether the lower court acted within the boundaries of such discretion and consistently with any legal standards applicable to the specific choices before it; and (3) whether the lower court reached its decision by an exercise of reason. *State v. Hedger*, 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989). Van Komen argues the court did not act consistently with applicable legal standards by relinquishing jurisdiction because he asserted a Fifth Amendment right against self-incrimination at his review hearing.

The Fifth Amendment, made applicable to the states through the Fourteenth Amendment, guarantees that "no person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. There is no case law directly addressing the application of the Fifth Amendment right against self-incrimination at a retained jurisdiction review hearing. However, a review of how the United States Supreme Court has recognized the right at the various stages of a criminal proceeding is instructive. The Supreme Court has applied the right differently in these stages depending on the interests the defendant has at stake.

A criminal defendant's Fifth Amendment right against self-incrimination applies with the most force leading up to and during a criminal prosecution, when the defendant's liberty interests may depend on the assertion of the right. To protect these interests before trial, the Supreme Court requires the government to tell criminal defendants they have the right and warn them the government will use their statements against them, *Miranda v. Arizona*, 384 U.S. 436, 444-45 (1966), and prevents the prosecution from using any unwarned statements at trial, *Oregon v.*

3

*Elstad*, 470 U.S. 298, 307 (1985). To protect these interests at trial (the guilt phase), the Supreme Court prevents prosecutors from commenting on a defendant's silence, *Griffin v. California*, 380 U.S. 609, 615 (1965), and requires courts to instruct juries that they may not draw *any* adverse inferences from a defendant's silence, *Carter v. Kentucky*, 450 U.S. 288, 299-303 (1981).

Although a defendant's Fifth Amendment right against self-incrimination remains intact during sentencing[1] (the penalty phase), the right applies differently than at trial because "the Fifth Amendment interests of the defendant are different." *White v. Woodall*, 134 S. Ct. 1697, 1703 (2014) (quoting *United States v. Whitten*, 623 F.3d 125, 131-132, n.4 (2d Cir. 2010) (Livingston, J., dissenting)). At sentencing, the defendant's Fifth Amendment interests shift from seeking liberty to mitigating penalties. Although these are important interests, the right against self-incrimination yields somewhat to the judge's broad sentencing discretion. *See Mitchell v. United States*, 526 U.S. 314, 338-339 (1999) (Scalia, J., dissenting). In *Mitchell*, the Supreme Court prohibited judges from drawing adverse inferences from a criminal defendant's silence at sentencing, but explicitly limited the prohibition "to factual determinations respecting the circumstances and details of the crime." *Id.* at 328. This limitation "leaves open the possibility that some inferences might permissibly be drawn from a defendant's penalty-phase silence." *White*, 134 S. Ct. at 1703 (holding that *Mitchell* cannot be read to require a *blanket* no-adverse-inference instruction at every penalty-phase trial). Because judges at the penalty phase might permissibly draw adverse inferences from a defendant's silence that the jury at the guilt phase may not, the Fifth Amendment right against self-incrimination is less absolute at sentencing than during trial.

After sentencing, a criminal defendant's Fifth Amendment right against self-incrimination changes once again. Because the trial court has determined the defendant's guilt and fixed a penalty for the convicted crime, the defendant's Fifth Amendment interests shift to avoiding additional penalties. Accordingly, the Supreme Court has limited the application of a criminal defendant's Fifth Amendment right in post-sentencing proceedings to situations where the consequences of asserting the right result in the imposition of an additional penalty. *See McKune v. Lile*, 536 U.S. 24, 49-50 (2002). In *McKune*, a plurality of four justices noted that "a valid conviction and the ensuing restrictions on liberty . . . . necessarily place limitations on the

---

[1] *Estelle v. Smith*, 451 U.S. 454, 463 (1981).

4

exercise of a defendant's privilege against self-incrimination" and rehabilitation is a legitimate penological interest that must be weighed against a defendant's exercise of his right against self-incrimination. *Id.* at 36-38. Although the plurality and Justice O'Connor disagreed on what standard applies to define a liberty interest, they agreed that there can be no compulsion where the consequences of invoking the right do not implicate a defendant's post-sentencing liberty interests. In her concurrence, Justice O'Connor stated that longer incarceration "as a penalty for refusing to incriminate oneself would surely implicate a 'liberty interest'" and constitute compulsion. *Id.* at 52. The plurality and Justice O'Connor further agreed that the Constitution does not prevent the government from requiring criminal defendants to choose between exercising the right and facing difficult consequences. *Id.* at 37-38, 41, 52-53.[2] Thus, where a defendant's post-sentencing liberty interests are not implicated, there is no compulsion, and hence, no violation of the right against self-incrimination.

We turn then to application of the right against self-incrimination at a retained jurisdiction review hearing. The purpose of retaining jurisdiction after imposing a sentence is to afford the trial court added time for evaluation of a defendant's rehabilitation potential and suitability for probation. *State v. Goodlett*, 139 Idaho 262, 264, 77 P.3d 487, 489 (Ct. App. 2003). During this period, the defendant is in the custody of the Department of Correction for the purposes of such evaluation. *Id.* At the end of the retained jurisdiction period, the court may suspend the defendant's sentence and place him on probation or relinquish jurisdiction over him, thereby executing his already imposed sentence. *Id.* If the court relinquishes jurisdiction, it may also reduce the defendant's sentence at that time. *Id.*

---

[2] The Court held the consequences the defendant faced--a reduction in incentive level and transfer from a medium-security to maximum-security part of the prison--did not amount to compulsion, in part because his prison sentence was not increased. *McKune v. Lile*, 536 U.S. 24, 38, 50-52 (2002). In other post-sentencing situations, the Supreme Court has held there was no compulsion where a probationer feared the court would revoke his probation absent truthful statements to his probation officer, *Minnesota v. Murphy*, 465 U.S. 420, 434-39 (1984); the *Griffin* rule does not apply to state prison disciplinary hearings, *Baxter v. Palmigiano*, 425 U.S. 308, 319 (1976); and there is no Fifth Amendment right against self-incrimination at a clemency interview, *Ohio Adult Parole Authority v. Woodard*, 523 U.S. 272, 286 (1998). Thus, in the post-sentencing context, the Supreme Court has limited a criminal defendant's Fifth Amendment right against self-incrimination. The Idaho Supreme Court has followed suit. *See State v. Crowe*, 131 Idaho 109, 952 P.2d 1245 (1998) (probation revocation).

5

In *State v. Coassolo*, 136 Idaho 138, 30 P.3d 293 (2001), the Idaho Supreme Court addressed whether the defendant in that case possessed a constitutionally protected liberty interest that would require a review hearing before the district court relinquished jurisdiction. In determining that due process did not require a review hearing, the Court first expressly differentiated a sentencing proceeding from a retained jurisdiction review hearing stating, "We first note that the constitutional protections required at sentencing are not applicable to the retained jurisdiction program because sentencing occurs before the period of retained jurisdiction, not when jurisdiction is relinquished." *Id.* at 142-43, 30 P.3d at 297-98. The Supreme Court held that a hope or expectation of probation at the conclusion of the retained jurisdiction period is not a liberty interest protected by the Due Process Clause. *Id.* at 143, 30 P.3d at 298.

Therefore, based on the *McKune* holding that there can be no compulsion where the consequences of invoking the right against self-incrimination do not implicate a defendant's liberty interests, and the *Coassolo* holding that defendants in the retained jurisdiction program do not have a liberty interest in probation, we conclude that the district court's demands did not amount to compulsion in regard to the Fifth Amendment analysis. Van Komen did not have a liberty interest in probation, so relinquishing jurisdiction could not implicate his liberty interests. Because relinquishing jurisdiction could not implicate Van Komen's liberty interests, relinquishing jurisdiction also could not amount to compulsion. While Van Komen's choice between refusing the polygraph and receiving his underlying sentence was no doubt a difficult one, the court did not violate the Constitution by requiring him to choose. Thus, the district court did not violate Van Komen's Fifth Amendment rights or abuse its discretion when it relinquished jurisdiction.[3]

---

[3]     Van Komen's reliance on *United States v. Antelope*, 395 F.3d 1128 (9th Cir. 2005) is misplaced. In *Antelope*, the district court initially sentenced Antelope to five years of probation. *Id.* at 1131. The court required Antelope to submit to random polygraph evaluations in a rehabilitative camp as a term of his probation. *Id.* Antelope failed to comply with several probation conditions and repeatedly refused to submit to polygraph evaluations. *Id.* At the probation revocation hearing, a camp counselor testified that he told Antelope that he would likely disclose any criminal polygraph admissions to authorities. *Id.* at 1135. The counselor also testified he had disclosed other defendants' criminal polygraph admissions to authorities and his reports led to additional punishment for those defendants. *Id.* The district court revoked probation and sentenced Antelope to an additional ten months of incarceration. *Id.* at 1131-32. On appeal, the Ninth Circuit held a defendant must prove "(1) that the testimony desired by the

# III.

## CONCLUSION

The district court did not violate Van Komen's Fifth Amendment right against self-incrimination or abuse its discretion when it relinquished jurisdiction. The district court's order relinquishing jurisdiction is affirmed.

Chief Judge MELANSON and Judge GUTIERREZ **CONCUR**.

---

government carried the risk of incrimination, and (2) that the penalty he suffered amounted to compulsion" to establish a Fifth Amendment claim. *Id.* at 1134 (citations omitted). Based on the camp counselor's testimony, the Ninth Circuit held the testimony desired by the government carried the risk of incrimination. *Id.* The *Antelope* Court grounded its analysis of compulsion in Justice O'Connor's *McKune* concurrence stating, "Justice O'Connor made clear in her *McKune* concurrence that she would not have found a penalty of 'longer incarceration' such as that here to be constitutionally permissible." *Id.* at 1138. Accordingly, the Court held the additional ten months of incarceration Antelope received for asserting his Fifth Amendment right against self-incrimination amounted to unconstitutional compulsion. *Id.*

Here, the district court did not and could not subject Van Komen to longer incarceration for asserting his right against self-incrimination, the penalty the *Antelope* Court held amounted to compulsion. Moreover, Van Komen was not threatened with the use of any information in a separate criminal proceeding.